Essex County Juvenile and Domestic Relations Court.

MOLLIE ROSE, COMPLAINANT, v. JOSEPH ROSE, DEFENDANT.

Decided February 15, 1932.

Before Joseph Siegler, judge.

For the complainant, *Samuel Samuelson.*

For the defendant, *Wolber, Gilhooly & Yauch* (by *Edward J. Gilhooly*).

Siegler, J. This is an action brought by Mollie Rose, complainant, against her husband, Joseph Rose, the defendant, for separate support and maintenance, under the Juvenile and Domestic Relations Court act (Revision of 1929), chapter 159 of the laws of 1929, alleging specifically in the complaint that the defendant did abandon and was neglectful of his wife by failing to sufficiently and regularly support said wife for over a period of two years, creating disturbances in the home and using extreme vile language.

Complainant and defendant were married on July 26th, 1929, the defendant at that time being a widower, with two children living with him at his home in Nutley. Complainant was a widow and had brought with her to the home of her new husband a son, about fifteen years of age. After her marriage to the defendant she assumed her place as his wife in the home, where his two children resided there with him.

The parties lived together in comparative happiness until sometime early in 1931, when trouble and quarrels arose which, according to the evidence, was largely due to money matters, and the method the wife wanted to employ in the purchase of supplies, clothing and other necessities in the home. At that time, and up until the time when the complainant left the home of the defendant, she was given charge accounts with various merchants in the vicinity of their home without any limitation, and that from time to time had access to the cash register for small sums of money which she would require from day to day for the maintenance of herself and family.

The arrangement which the defendant had provided for his family is that he had pledged his credit at several stores at which she could buy such food and clothing as she saw fit. In addition to that, he made some small purchases for his wife and children, and paid all the necessary expenses for fuel and light, and other incidentals that were necessary for the proper operation and management of the home.

The defendant is a man who, according to the evidence, started as a small merchant some seventeen years ago and built his business to quite substantial proportions, so that in March, 1931, according to his financial statement given to the Franklin National Bank of Nutley, he had a net worth of $64,898.96. This was primarily represented by real estate. A large portion of it was undeveloped land; some savings in building and loan shares, and the other portion in merchandise used in the current operation of his hardware store.

From the very beginning of this marriage his wife received no cash weekly allowance to continue the management of his household. Under the arrangement which the defendant adopted and carried out, of paying for what he required in the home and placing his credit at the disposal of his wife, and there appears to be no dissatisfaction of the complainant of this arrangement, for she continued to live by this method, and, from the overwhelming testimony in the case, ran a very nice home in that it was well furnished

and always sufficient food at hand for the family and such guests as came to the house from time to time.

There is some testimony on behalf of the complainant which indicates that there were many quarrels concerning money matters, the use of vile language back and forth, but no creditable testimony which in the slightest degree indicated that the husband ever threatened his wife with physical violence or placed her life and limb in jeopardy or so conducted himself that the wife had reasonable grounds to fear for her life or limb.

In addition to what was available to the wife through the pledge of the husband's credit, he presented her with a fur coat which cost him $285 and a diamond ring which cost $487.50, paid for five shares in the Yanticaw Building and Loan Association, and other articles which he furnished of his own volition, all of which indicates that while he might have been financially capable of doing more, it was a reasonable discharge of his duties in that respect to his wife and family.

On March 27th, 1930, the complainant voluntarily joined in a deed of conveyance of real estate to a corporation of which the husband was the chief stockholder, known as the Estates Realty Corporation. No complaint or dissatisfaction was expressed by the complainant to her husband, and, according to the evidence, in fact to anyone else, until October 21st, 1931, when she instituted suit in the Court of Chancery of New Jersey praying for the setting aside of the conveyance on the ground of fraud and the reinstatement of whatever rights she had of inchoate dower in the said premises.

From this time the feeling between this couple became more intense, the quarrels more frequent, and the dissatisfaction more pronounced.

The defendant indicated his desire to reconvey this property back where it was at the time of the marriage, and only because of a large demand of counsel fees on behalf of the complainant did this reconveyance fail of execution. It is clear, and I am satisfied, that the defendant was willing to

reconvey the property so that the inchoate right of dower which existed prior to conveyance would be reinstated but for defendant's unwillingness to pay the counsel fee.

The wife continued to live with her husband under the same roof notwithstanding the pending of this suit in the Court of Chancery, but expressed complaint about her health being impaired, which appeared to be the culmination primarily of monetary dissatisfaction in the home.

Finally, on December 29th, 1931, after a quarrel with her husband, the complainant, while walking on the street, collapsed, and was thereafter removed to a friend's house in Newark. She then returned home the next day, where she stayed until January 2d, 1932, when she decided to leave the home to go to a Mrs. Thiele on Broad street, Newark, and has remained there, and has refused to come back to her home.

The defendant visited her on January 2d, 1932, and in an informal way advised her to come home, promised to care for her, and then, again, during the pendency of this trial, visited her in Newark and implored her to return to her home, and that he would take care of her, all of which she refused to accept only upon the following conditions: (1) that the defendant would give her a definite alowance, and, (2) that the defendant would reconvey all of the property formerly conveyed to the Estates corporation in which deeds she had joined.

The doctors who examined and treated the complainant from time to time, and up to the institution of this action, found her to be in good health excepting that she was very nervous, and that a little rest in some country place would soon bring her back to her usual vigor and strength. There was some testimony regarding an attempt at an abortion. No credence can be placed on this because there is no reliable evidence that an abortion was committed or that the complainant was pregnant.

The complainant, to succeed in her action, must establish legal justification for leaving her husband which would entitle her to separate support and maintenance.

The briefs of counsel rely upon the same cases for the establishment of their contentions. It resolves itself to an application of the facts to the rule of law well established by these cases.

In Tayor *v.* Taylor, the leading case on this subject, the Court of Errors and Appeals, in 73 *N. J. Eq.* 745; 70 *Atl. Rep.* 323 (at *p.* 325), said: "The rule of this state may be considered settled as follows: that to justify a wife in separating herself from her husband, physical violence need not be proved, but such conduct of the husband must be shown as will reasonably convince the court that her life or health was in danger, or her life rendered one of such extreme discomfort and wretchedness as to incapacitate her to discharge the duties of a wife; or that the conduct of the husband, if continued, would have brought about these conditions." This rule has also been followed in *McGuiness* v. *McGuiness* (*Court of Errors and Appeals*), 107 *N. J. Eq.* 614; 153 *Atl. Rep.* 503.

The first question, therefore, that it becomes the duty of this court to determine is whether or not the separation of the complainant from her husband was justified according to the standard of the decisions to which I have just referred; whether the treatment of her husband was the cause of that separation; and, if so, if that treatment amounted to extreme cruelty within the meaning that has been attributed to it by the cases to which I have referred.

It is clear that the alleged wretchedness and discomfort upon which the complainant relies for her justification in leaving her husband, if such a condition existed, was not the result of any matrimonial breach by the defendant of his obligations as a husband, but were merely based upon dissatisfaction and discomfort that arose out of monetary matters, such as a failure of the husband to give his wife a money allowance and a refusal to reconvey the property in the Estates corporation.

The separation was due, it now appears, not to her fear for personal safety, but to her desire to obtain a regular allowance and a reconveyance of the property; the latter is the reason; the former the excuse.

I find that the treatment of the defendant, of his wife was not the cause of the separation, and that the treatment did no amount to extreme cruelty within the meaning that has been laid down by the cases on the subject.

On the question of whether or not the husband has discretion as to the manner and style in which they shall live, the case of *Pattberg* v. *Pattberg*, 94 *N. J. Eq.* 715; 120 *Atl. Rep.* 790, in my opinion is dispositive of the point raised. In that case Vice-Chancellor Bentley, dealing with a very similar question (at *p.* 791), says: "The single question involved relates to his right, to support his wife in this fashion, rather than to give her a regular allowance to meet the expenses of her household. * * * It will have been observed that the husband has deserted his wife; that is, he has separated himself from her without any justifiable cause. While he remained with her and was guilty of no matrimonial offense, his discretion was almost unbounded as to the manner and style in which they should live. While it is true that a husband must support his family according to his station in life, it is also true that while he remains a member of the family partnership and the head thereof, a wide latitude of discretion must be allowed him as to how much of his income it is advisable to spend and how much should be retained for the purpose of establishing a competence for the future. *Furthermore, he is entitled, to a large extent, to dictate the manner in which said funds shall be spent* [italics mine]; but when he separates himself from his wife in a case like the present one without any justifiable cause, he becomes a wrong-doer, and I do not understand that he can wrong his wife and then continue to exercise the same degree of control over her that is vested in an innocent husband who is living with his family and seeking to do the best for them."

So, applying this statement of law to the facts in the case at bar, the defendant here is not guilty of any matrimonial offense. His discretion was almost unbounded as to the manner and style in which they should live. If that was his right, and his wife refused to accept this method in the care and maintenance of the family, and thereby leaves her hus-

band, she becomes the deserter, and not the husband, and, carrying this to its logical conclusion, if because of that refusal by the husband she becomes dissatisfied and uncomfortable and even wretched she has no legal cause for complaint.

In my judgment, the complainant has not, by the proofs introduced by her, brought herself within either of the tests referred to, and therefore the petition for relief must be dismissed.

Upon her application under the Poor act, the proof does not show that she is destitute or liable to become a charge upon the public. The husband offers her a home, care and support, if she will return to it. So long as that offer is open, the husband is chargeable with his wife's maintenance. If she returns, it is his duty to accept her and care for her in the present posture of the case. The prayer for relief on this application is not established, and therefore the petition is dismissed with regard to that relief.

There will be a judgment of dismissal of the whole petition.