SARAH H. ZWEIG, petitioner,

*v.*

BENJAMIN ZWEIG, defendant.

[Decided October 10th, 1934.]

*Mr. Anthony P. La Porta,* for the petitioner.

*Mr. Isadore Glauberman,* for the defendant.

VAN WINKLE, A. M.

The petitioner in this divorce suit filed a bill for maintenance in 1932, alleging extremely cruel treatment on the part of defendant, and that "defendant remained with complainant under the same roof until the 24th day of November, 1932, at which time he completely severed all his relations with complainant and left and abandoned her, without her permission or consent, and separated himself from her."

On final hearing counsel for defendant admitted, without any evidence about extreme cruelty or abandonment being taken, that defendant had unjustifiably abandoned complainant; and, after testimony had been taken to ascertain if defendant had neglected or refused to adequately support complainant, a decree of dismissal was entered on August 2d, 1933, which contains a recital "that the defendant unjustifiably abandoned the complainant, as alleged in said bill of complaint, but that 'the defendant has not refused or neglected to support the complainant, and the complainant is not entitled to the relief therein prayed," which recital is written in the decree preceding the decretal part of the decree.

On December 13th, 1933, petitioner filed a petition for divorce from defendant, in which petition she sets up this decree of dismissal; and also the petition charges defendant with extreme cruelty, the acts alleged and the language charging their commission being the same as in the bill for maintenance; and petitioner prays a decree of divorce on the ground of this extreme cruelty. Defendant filed his answer admitting the entry of the decree of dismissal and denying the allegations of extreme cruelty; and his answer avers that subsequently to November 24th, 1932, he requested petitioner to return to him and resume marital relations with him and that she has refused.

Counsel for petitioner now moves to strike out this answer, on the following grounds:

1. The answer of the defendant discloses no defense to the petition for divorce.

2. There are no facts in the defendant's answer which show, or tend to show, that the alleged acts of extreme cruelty complained of were in any way condoned by a resumption of cohabitation, or in any way whatsoever.

3. The defendant has not pleaded in his answer anything by way of confession and avoidance to preclude and bar the petitioner's right to recovery.

4. The defendant is estopped from contesting and disputing the facts constituting the abandonment as alleged in the bill of complaint, which is made the basis for this divorce

proceeding, under and by reason of the decree of dismissal which is annexed to the petitioner's petition for divorce and is admitted by the defendant in his answer, and for the further reason that the defendant cannot attack the decree aforesaid, collaterally, which he is now attempting to do by his answer aforesaid.

At the outset it should be said that petitioner in her maintenance suit did not allege that defendant's extreme cruelty compelled her to leave him, and thus there had been a constructive desertion. She claimed that defendant, although remaining in the home, left her without her consent. The main issue, following the trial of which the decree was entered, was one of unjustifiable abandonment and neglect or refusal to support. However, in disposing of this motion I shall assume, as counsel for petitioner does, but as I think, improperly, that the recital in the decree of dismissal is equivalent to a finding of extreme cruelty.

Counsel for petitioner submits that his motion is "in the nature of a demurrer;" and, in substance, it is a demurrer, as I see it; but a demurrer to an answer in equity is not recognized. The court of errors and appeals affirmed Vice-Chancellor Stevenson's opinion *in toto* in *Commonwealth Title Co.* v. *New Jersey Lime Co., 86 N. J. Eq. 450; 100 Atl. Rep. 52,* in which he held that a motion to strike out an answer is equivalent to exceptions; that the motion stands before the court precisely as if, under the old practice, complainant had filed exceptions; and in disposing of the application to strike out the answer the vice-chancellor was moved to say: "Demurrers in equity should be discouraged as tending to unnecessary delay and as presenting often to the judgment of the court purely academic questions, the discussion and determination of which frequently embarrass rather than aid the administration of justice, the application of law to the facts of the case when those facts are actually proved at the final hearing. Among the proposed amendments to our chancery practice is one abolishing demurrers. In my opinion, demurrers to bills should never be allowed excepting by leave of the court. The motion to strike out an answer, or a portion of an answer, which is ap-

pealable under our practice, is less worthy of favor than a demurrer to a bill. This motion is a proceeding often involving only expense and delay." In *Leslie* v. *Leslie, 52 N. J. Eq. 332; 31 Atl. Rep. 724,* it was held that on an application to strike out an answer or parts of an answer the same rules must be applied in determining whether the application shall be granted or not that would be applied in deciding whether exceptions to an answer are well taken or not; and in *Doane and Jones Lumber Co.* v. *Essex Building and Land Co., 59 N. J. Eq. 142; 45 Atl. Rep. 537,* it was held that a motion to strike out allegations of an answer in equity on the ground that matter set up does not disclose an equitable defense is a mere demurrer, and hence erroneous under the rules authorizing adjudication of objections to any pleading on motion without demurrer. Vice-Chancellor Grey in *Haberman* v. *Kaufer, 60 N. J. Eq. 271, 274,* said: "The characteristics of a motion to strike for impertinence appear to have been overlooked by the counsel on both sides, as they have each argued the motion to strike as if it presented a question of the sufficiency in law of the challenged facts set forth in the answer to constitute a defense. * * * The complainant seeks, under a motion to strike, to demur to the defense set up in the answer. This practice is not allowed in this court, and is not within the spirit of rule 213 governing motions to strike out answers. A motion to strike out a defense in an answer, under that rule, takes the place of the more tedious procedure by exceptions. The rule does not introduce a new practice whereby the legal sufficiency of a defense presented in an answer may be tested by moving to strike it out; that is, under the form of a motion to strike out, the complainant cannot, in substance, demur to the answer. *Leslie* v. *Leslie, 5 Dick. Ch. Rep. 155; Doane* v. *Essex Building Association, ubi supra; Brill* v. *Riddle Co.* (May, 1900, in this court)." *47 Atl. Rep. 223.*

The rules of this court have been changed since *Haberman* v. *Kaufer, supra,* was decided; but there is nothing in the rules which permits a demurrer to an answer, or a motion to strike out an answer, except so far as rule 67 is to be

considered—of which rule more hereinafter. The old rule 213 referred to by Vice-Chancellor Grey in *Haberman* v. *Kaufer, supra,* read as follows: "Any objections to any pleadings or any part thereof, may be made and adjudicated upon, on motion, without the filing of a demurrer or exceptions, but the notice of such motion (which shall be an eight days' notice) must state the particular ground or grounds of objection. The making of a motion under this rule shall be deemed a waiver of the right to demur or except, and the motion, if made in reference to a bill, must be made within the time limited by law for demurring, unless the court, on application, shall grant further time (and in case of an answer, the objection thereto shall be taken before a replication has been filed)." The present rule 75 provides that "all objections to pleadings must be made by motion." Rule 59 annexed to the Chancery act of 1915 (*P. L. 1915 p. 196*), now included in the present rule 75, is the same in words as rule 75.

Exceptions to an answer are of two kinds: (1) For insufficiency; (2) for scandal and impertinence. The former lies where the answer does not sufficiently respond to the allegations and charges in the bill, and the latter where the answer contains scandalous or impertinent matter. Exceptions for insufficiency can only be sustained where some material allegation, charge or interrogatory in the bill is not fully answered. *Fletch. Eq. Pl. & Pr. 355.* Impertinence consists of an allegation that is irrelevant to the material issues made or tendered. *Ibid. 156.* Any matter in an answer which is fairly responsive to the bill is not impertinent. The test of impertinence is to inquire whether the subject of the allegations could be put in issue. *Ibid. 344.*

Defendant denies the alleged extreme cruelty, and in denying the alleged cruelty defendant is impliedly asserting that the decree of dismissal does not preclude him from calling on petitioner to prove her allegations of extreme cruelty. This is what defendant has put in issue, and this is not impertinent. This is the thing that is challenged by this motion to strike out. As the grounds for the motion to strike out do not allege insufficiency or impertinence, the

motion to strike out must fail, because it is, in substance, a demurrer to the answer, it being a motion made with the purpose of testing the legal sufficiency of the defense presented by the answer. In an ordinary equity case, as it was not permissible to file a demurrer to an answer, before the promulgation of rule 67, if it was desired to submit the case on questions of law arising on the answer, the only method was by setting down the cause for hearing on bill and answer. *Fletch. Eq. Pl. & Pr. 354.* But a divorce suit may not be set down for hearing on the pleadings.

If there were no adjudications in this court, or in the court of errors and appeals, other than those I have referred to, on the subject thus far discussed, it would be clear that the motion to strike out the answer in the present case should be denied; but there is an opinion by the late chancellor (*Weidman Silk Dyeing Co.* v. *East Jersey Water Co., 88 N. J. Eq. 397; 102 Atl. Rep. 858, 1056*) in which he held that while a motion to strike out an answer on the ground that it discloses no defense would not have lain prior to the promulgation of the present chancery rule 67, which reads as follows: "Demurrers, pleas and exceptions to answers are abolished. Any pleading may be objected to on motion on the ground it discloses no cause of action, defense or counter-claim respectively," that this rule is, in its language, "a clear departure from that of the former rule 213; and that an answer may be objected to on motion on the ground that it discloses no defense;" and he added, "of course, if the answer be struck out in its entirety the complainant would be entitled to a decree, either as on confession or on proofs taken *ex parte,* unless leave were given to answer over." This decision was affirmed by the court of errors and appeals (*Weidmann Silk Dyeing Co.* v. *East Jersey Water Co., 89 N. J. Eq. 541; 105 Atl. Rep. 194*), but it is to be noticed that in its short affirmance that court did not at all discuss rule 67. This is part of the affirmance: "The opinion of the chancellor sufficiently vindicates the result he reached * * *. We agree that the facts conceded in the bill and answer entitle the complainant to a decree." As I understand, this affirmance shows that the court of errors and appeals approved a

decree for the complainant because the bill and answer together showed a situation which entitled complainant to a decree, which is different, of course, from the striking out of an answer. And, even if the opinion of this court, in this *Weidman Silk Dyeing Co.* v. *East Jersey Water Co. Case*, does state that the answer, as a whole, should be struck out, the court of errors and appeals approved only the result reached in this court and not necessarily the procedural method by which that result was reached. I think this opinion of the court of errors and appeals shows that what was approved was a decree for the complainant, which was based not only on the bill, but also on the answer. But a decree in a divorce suit cannot be so based.

There are two reasons, as I view the matter, which together warrant me in holding, on principle and on authority, that the present motion to dismiss should be denied, despite this decision of the late chancellor and its affirmance by the court of errors and appeals. As to the first reason, which has application to an ordinary suit in this court as well, I but suggest that rule 67, on the language of which, as "a departure from that of the old rule," the late chancellor based his decision, was in force at the time the court of errors and appeals affirmed Vice-Chancellor Stevenson's decision in 1916 (*Commonwealth Title Co.* v. *New Jersey Lime Co., supra*); and while rule 67 is not specifically mentioned in the opinion of the vice-chancellor it should be held to be within the purview of his decision. If this suggestion is well made it follows that, if the court of errors and appeals, in its affirmance of the late chancellor (*Weidmann Silk Dyeing Co.* v. *East Jersey Water Co., 89 N. J. Eq. 541; 105 Atl. Rep. 194*) did not necessarily approve the striking out of an answer on the ground that it showed no defense, then either the point may now be ruled on by this court, or it is controlled by the decision of the court of errors and appeals (*Commonwealth Title and Trust Co.* v. *New Jersey Lime Co., supra*) in affirming Vice-Chancellor Stevenson. I may add that it seems clear that the old practice, as laid down in *Commonwealth Title Co.* v. *New Jersey Lime Co., supra; Leslie* v. *Leslie, supra; Doane and Jones Lumber*

*Co.* v. *Essex Building and Land Co., supra,* and *Haberman* v. *Kaufer, supra,* is the better practice, because the achieving of justice with the most expedition is the desire of suitors and the aim of this court. I think that the observations of Vice-Chancellor Stevenson, which he made in *Commonwealth Title Co.* v. *New Jersey Lime Co., supra,* show that the practice approved in that suit is the better practice.

Next, I think that rule 67 does not relate to answers in divorce suits, because of the peculiar nature of such suits. Consider the result of an answer in a divorce suit being struck out on the ground that it showed no defense. Apply the language of the late chancellor in the case hereinbefore discussed (*Weidmann Silk Dyeing Co.* v. *East Jersey Water Co., 88 N. J. Eq. 397; 102 Atl. Rep. 858, 1056*), to wit, "of course, if the answer be struck out in its entirety the complainant would be entitled to a decree, either as on confession or on proofs taken *ex parte,* unless leave were given to answer over." But there can be no decree "as on confession" in a divorce suit. Here we think of Mr. Bishop's so-often-repeated language that a divorce suit is "a triangular suit, *sui generis.*" In divorce suits the state is a party whose interest the court at all times will save and protect. And as the law favors marriage and disfavors divorce, the court will do nothing to facilitate the latter, but will only dissolve the marriage relation when the complaining party is strictly entitled to a decree. A judgment by default is not favored in a divorce suit. *Grant* v. *Grant, 84 N. J. Eq. 81; 92 Atl. Rep. 791; Rinehart* v. *Rinehart, 91 N. J. Eq. 354; 110 Atl. Rep. 29.* It is the policy of the law that all proper defenses be made or compelled. *Feickert* v. *Feickert, 98 N. J. Eq. 444; 131 Atl. Rep. 576.* The peculiar characteristics of divorce suits are written large in the decisions of our courts, as in the courts of virtually every American jurisdiction. An admission in an answer in a divorce suit may not prove a case. Otherwise there might be a decree based on a petition and the answer thereto, with no testimony taken. It is my opinion that, unlike in ordinary equity suits, the allegations of the petition are not necessarily to be taken as true on the

present motion to strike out the answer. Nothing can be taken as true in a divorce suit. *Schoul. Marriage, D. & S.* § *15-31.* I think this is a principle to be applied not only to the substantive law of divorce, but also to the procedure of a divorce suit, to what we call the adjective law. This principle and the other principles referred to permeate a divorce suit from beginning to end.

In my opinion an answer in a divorce suit should not be stifled by any procedure. This court should not, by its order on the pleadings, override or suppress the denials of an answer in a divorce suit. To strike out the answer in the present suit would be wrong in principle; and I find no compulsion in rule 67, for the reasons somewhat expressed herein. I am not ignoring the provision of section 9 of our Divorce act that the same process and procedure shall be had and pursued in divorce suits as are usually had and pursued in other causes in the court of chancery, except so far as other process and procedure is prescribed by or under the authority of the act. But I should say that what is substantive law and what is adjective law in divorce suits is not so clear, because of the peculiar characteristics of divorce suits. "Students of legal history know the truth of the statement that 'the substantive law is secreted in the interstices of procedure,' nor need practitioners be reminded how frequently changes in procedure affect the substantive rights of parties." (Professor Morris R. Cohen, *Law and the Social Order,* published 1933—at *p. 128*).

There are other reasons why the motion should be denied; and they should be mentioned, because counsel for petitioner is not to regard his motion as dismissed only on the grounds hereinbefore stated. He is not to be left with the thought that he may have the right to renew his motion on final hearing on his offering the decree of dismissal in evidence.

Counsel for petitioner is in error in attributing to the recital in this decree of dismissal the force of an adjudication of extreme cruelty as in a decree of divorce in a suit for divorce. A matter is not *res judicata* unless there be identity of the thing sued for, of the cause of action, of the persons and

parties, the quality of the persons for and against whom the claim is made, and the judgment in the former action be so in point as to control the issue in the pending one. *Hoffmeier* v. *Trast, 83 N. J. Law 358; 85 Atl. Rep. 221.* In the absence of proof that a particular issue actually was tried and determined in arriving at a former judgment, it is conclusive by way of estoppel only as to those facts without the existence and proof or admission of which it could not have been rendered; in other words, it is conclusive evidence of whatever it was necessary for the court or jury to have found in order to warrant the decision or verdict in the former action, and no further. *34 Corp. Jur. 927.* If it is doubtful whether a second suit is for the same cause of action as the first the proper test is to consider whether the same evidence would sustain both. If different proof would be required to sustain the two actions, a judgment in one is no bar to the other. It has been said that this method is the best and most accurate test as to whether a former judgment is a bar in subsequent proceedings between the same parties. *15 R. C. L. § 439.* In a second suit between the same parties for a different cause of action only those matters within the issues actually litigated and determined (in the first suit) are *res judicata. Spingarn* v. *Spingarn, 8 N. J. Mis. R. 423; 150 Atl. Rep. 764,* citing *Nagle* v. *Conrad, 96 N. J. Eq. 61; 125 Atl. Rep. 20; Paterson* v. *Baker, 51 N. J. Eq. 49; 26 Atl. Rep. 324,* and *In re Walsh's Estate, 80 N. J. Eq. 565; 74 Atl. Rep. 563.* In a second suit between the same parties for a different cause of action it is permissible to look into the record to ascertain whether an issue presented in the second suit was actually tried and decided in the first (*Ibid.*).

In the present suit there is not identity of the thing sued for, nor of the cause of action, nor of the judgment, nor of the evidence. The relief asked for in the present divorce suit is not the same relief as was asked for in the maintenance suit. The present suit is brought to dissolve a marriage. The maintenance suit was brought to enforce the legal obligations of that marriage and to obtain a money decree. Even if, however, the decree of dismissal is to be viewed as one which establishes the fact that the extreme cruelty alleged

in the bill for maintenance was in issue and was proved in the maintenance suit, it is to be said that the decree did not, necessarily, establish the existence of extreme cruelty to such an extent or to such a degree, that such cruelty should or could be viewed as a sufficient basis for a decree of divorce for extreme cruelty, because a maintenance decree may be made where extreme cruelty is alleged and adjudicated, on evidence which is not corroborated. A decree in a maintenance suit may be founded on evidence of a lower degree than that necessary to entitle a petitioner to a decree of divorce.

The opinion of Vice-Chancellor Leaming, in *Taylor* v. *Taylor,* which was affirmed by the court of errors and appeals *in toto* (*73 N. J. Eq. 745; 70 Atl. Rep. 323*), impliedly, but plainly, held that where a wife separates herself from her husband and claims alimony, she must justify the separation by proof of the extreme cruelty alleged to the same extent as if she were suing for divorce on the ground of extreme cruelty. This holding is best shown by the vice-chancellor's own words: "The testimony upon the part of the complainant, if accepted in its fullness, might justify an affirmative conclusion. If all that is claimed in her behalf be accepted, it is probable that her treatment at her home may have been of such nature as to justify her, in the preservation of her health, to take the radical step which she took in leaving her home; but that testimony and that claim, in practically all of its essential features, is without corroboration. The witnesses called to corroborate her in these matters have failed entirely to disclose any such condition of affairs at her home as would entitle a court to make an affirmative finding to the effect of extreme cruelty, as claimed by complainant; and in view of the contrary and opposing testimony that exists in this case it is entirely manifest that no such finding can properly be made."

Later, in *Pinkinson* v. *Pinkinson, 92 N. J. Eq. 669; 113 Atl. Rep. 143,* a maintenance suit, the court of errors and appeals held that "the court will consider in the disposition of the case the evidence of the parties as to the cessation of marital relations, although the evidence is uncor-

roborated." In this case the wife left the husband, and extreme cruelty was not involved. This opinion distinguished with respect to corroboration as between maintenance suits and divorce suits, and refers to *Stieglitz* v. *Stieglitz, 92 N. J. Eq. 292; 112 Atl. Rep. 310,* in which case it was held that a divorce on the ground of desertion would not be granted upon the uncorroborated admission or testimony of a party to the suit that no sexual intercourse had been had. Then the opinion continues: "In the present case there is no corroboration of the testimony of the parties that prior to the separation they had sexual intercourse. We do not, however, feel that in taking into consideration this evidence we are running counter to the opinion of this court in *Stieglitz* v. *Stieglitz.* In that case the parties sought a dissolution of the marriage relation. The dissolution of the marriage relation is a proceeding which the law does not favor. The present proceeding is not one seeking a dissolution of the marriage relation, but one to uphold an obligation implied by the relation. The cessation of intercourse is but one element or factor to be taken into consideration in reaching a conclusion upon the question involved. We are, therefore, of the opinion that it is proper, under such circumstances, to consider the testimony of the parties on this subject, although uncorroborated." This holding in *Pinkinson* v. *Pinkinson, supra,* was followed in *Shore* v. *Shore (Court of Errors and Appeals), 96 N. J. Eq. 661; 126 Atl. Rep. 320,* in which case the husband had physically left the wife, and extreme cruelty was not involved.

It has been held that where a wife obtains a decree in a maintenance suit on the ground that the husband has unjustifiably abandoned her and has neglected or refused to support her, even if the decree rests on consent, she may use the decree in a suit subsequently brought by her for divorce on the ground of desertion after two years have run from the entry of the decree, as conclusive of the fact that the husband left her. However, before she may have a decree of divorce she must, in addition, present corroborated evidence of the continuance and obstinacy of the desertion for the two-year period.

If the contention of counsel for petitioner is correct, a wife, unable to corroborate her testimony with respect to extreme cruelty, might plan to first get a decree for maintenance, based on her uncorroborated testimony, and then, immediately after the entry of such decree, file a petiton for divorce and get a decree of divorce for extreme cruelty, with no corroboration, by default. Moreover, a decree of divorce for extreme cruelty might rest entirely on consent and with no corroboration. Corroboration of a petitioner's testimony in divorce cases is part of the substantive law of divorce, evolved by the court as a matter of sound public policy. *Rogers* v. *Rogers, 89 N. J. Eq. 1; 104 Atl. Rep. 32.*

As no corroboration is required in a maintenance suit where extreme cruelty is the issue, if a decree in a maintenance suit, like the decree under examination, is to be held an adjudication of extreme cruelty, it should be so held only to the extent and to the degree that proof of extreme cruelty is required in a maintenance suit.

Holding, as I do, that an answer in a divorce suit, which contains denials of the petitioner's right to relief, may not be struck out on the ground that it discloses no defense; and that the rule adopted by the court of errors and appeals in *Taylor* v. *Taylor, supra,* has been changed by the decisions of the same court in *Pinkinson* v. *Pinkinson, supra,* and *Shore* v. *Shore, supra;* and that the rule declared by the court of errors and appeals in these last two named cases is that corroboration is not essential in maintenance suits; that this is a general rule; that it must be viewed as a general rule because of the reasons on which it rests, as stated by the court of errors and appeals in these two cases; and that this rule therefore includes within its scope an issue of extreme cruelty in a maintenance suit; it appears that the decree of dismissal pleaded in the present suit—leaving aside the fact that the reference to extreme cruelty in the decree is in the reciting part of the decree, the fact that the recital is of an affirmative fact which did not warrant the decree, which is a negative decree, and the fact that the decree rests on consent—was not made on testimony which was necessarily corroborated, the motion to strike out the answer is denied.