87 N. J. Eq. Fraser v. Fraser.

WILLIAM J. FRASER, appellant,

v.

MARY M. FRASER, respondent.

[Submitted December 11th, 1916. Decided June 18th, 1917.]

1. It is the duty of a husband to provide a home for his wife in which she is recognized by its inmates as the household mistress, and when the husband subjects his wife in the management of her household affairs to the interference of his mother who manifests an enmity towards the wife, and by words and acts assails her conduct and reputation to such an extent that she cannot endure it, and leaves the home for that reason, her desertion may be willful but it does not become obstinate so long as the husband makes no effort to induce her to return to a home freed from the contentious element.

2. A wife left her husband's home after notifying him that she would do so unless he provided a home apart from his mother, whose conduct she claimed humiliated her, and, who had charged her with being a bad, wicked woman; this the husband refused, saying, "That is up to you." When she left, her husband was present, made no protest and did not ask her to stay. She took with her their only child, three weeks old, and the husband never attempted to see his wife or the child although they lived in the same city. After two years the husband decided to move to this state in order to obtain a divorce for desertion. Shortly before coming to this state he wrote a letter to his wife, and the day after he moved he wrote her another, the contents of these letters being the only proof of an attempt to induce his wife to return. Neither letter contained any request or invitation, but a mere statement that the home was open for her return under old conditions, including the presence of his mother.—*Held*, that these letters were not proof of a *bona fide* effort to induce the wife. to return, for there was no promise to remove the real cause of the separation, which the husband recognized when he permitted his wife to leave without protest. Nor did they invite the wife to return, and were evidently written as a basis for the intended divorce proceedings, embodying terms which he knew the wife could not accept.

On appeal from the court of chancery.

*Mr. Edward Maxson*, for the appellant.

*Mr. James A. Sullivan*, for the respondent.

The opinion of the court was delivered by

BERGEN, J.

From a decree of divorce based upon the petition of the husband alleging desertion by the wife she has appealed.

They were married in the city of Brooklyn, New York, where both resided, July 10th, 1910; a child was born April 24th, 1911; the defendant left petitioner's house with the child May 13th, 1911, and since that date the parties have lived in separate homes. The reason which the wife gives for leaving her husband's house is that the conduct of the husband's mother, who was an inmate of the home, made her life intolerable by constant quarrels, charged her with being a bad woman, estranged her husband's affection who espoused the cause of the mother, and in many ways manifested her ill-will towards the wife by acts and speech, so that her position as mistress of the home was depreciated and she humiliated, and deprived of the comfort and happiness she had a right to enjoy; that there were many disagreements and quarrels between the women is not disputed, the testimony showing that the husband was aware of the condition, and that as early as November, 1910, his wife complained to him that unless he provided her a home separate from his mother she would have to leave him. There is no doubt that it was a contentious household for which the mother was at least partly to blame, so that if her conduct was not modified there could be no happiness, and this the husband did not undertake to accomplish, for he testified that he heard both sides and remained neutral, even when told by his wife that his mother had written a letter to a fortune teller in which the wife was described as "a bad, wicked woman." This attitude on the part of the husband is not perhaps such legal cruelty that it would justify a wife in leaving the home, but there is a species of cruelty which cuts deeper than a blow or the lash, and that is the weakening of a husband's love and affection through the disparagement of the wife by the husband's mother, and when not resented by him, but apparently sustained, is bound to destroy the happiness of the home.

Under such circumstances, it is his duty to remove the cause, and if he refuses it is a potent element in the consideration of the questions whether he did not consent to the separation, and whether he made a *bona fide* effort to induce his wife to return. The animus of the mother is further manifested by the fact that, although an inmate of the house when the child was born, she never made any effort to see the child and. so far as the testimony shows, never. did.

This cause illustrates the futility of attempting to establish such a home as a husband should provide for his wife when one of the component parts is his mother who up to the time of the introduction of the wife is its head, and who is not willing to graciously accord to the wife her rightful position as mistress, and where the husband in all disagreements between his mother and wife either supports the mother or remains neutral between the contending forces. It is the duty of the husband to provide a home for his wife where she is recognized by its inmates as the household mistress, and when the husband subjects his wife in the management of her household affairs to the interference of his mother who manifests an enmity towards the wife, and by words and acts assails her conduct and reputation to such an extent that she cannot endure it, and leaves the home for that reason, her desertion may be willful, but it does not become obstinate so long as the husband makes no effort to induce her to return to a home freed from the contentious element. Shortly before the wife left she again told her husband that unless he provided a home apart from his mother she would leave, and he admits that his reply was, "That is up to you," and on the day she moved he was present cutting the lawn, but paid no attention to the moving, nor did he say a word to her of protest or request her to remain.

The fair inference from this record is that he tacitly consented to the separation, preferring to retain his mother rather than his wife and child. Under these circumstances, the husband was not without fault, and, assuming that the desertion by the wife was willful, it is not obstinate unless after a *bona fide* effort to effect a reconciliation the wife refused to return,

and we must therefore consider and determine whether such an effort has been made. It was manifest to the husband that no permanent reconciliation could be effected if the same conditions remained and the wife required to accept a home with his mother who considered her "a bad, wicked woman." This was a humiliation he knew she would not submit to. In our opinion the record fails to show any such *bona fide* effort as the law requires. In *Van Wart* v. *Van Wart, 57 N. J. Eq. 598,* the husband, when the wife was leaving, as in this case, "stood by without asking her to stay," and it ·was held that it was his duty to make a *bona· fide* effort to induce her to return. "Desertion cannot be considered as obstinate on the part of one when the separation is acquiesced in by, and entirely satisfactory to the other, who ·neither entertains nor manifests any desire that the separation, nor the causes which brought it about, should cease."

*Chipchase* v. *Chipchase, 48 N. J. Eq. 549;* affirmed on opinion below, *49 N. J. Eq. 594.* What has the petitioner done in this case to manifest a sincere desire that the separation, and the causes which brought it about should cease, the cause being a contentious mother-in-law unkindly disposed towards the wife? We have his admission that he has never visited his wife or child, although they lived in the same city, and he testifies that he has no affection for the child. He does not claim that he would not have been allowed to see either his .wife˙ or child, or that he made any effort to do so; he sulked in his tent until he wished to obtain a divorce. In March, 1913, he removed to New Jersey for, as he testified, the express purpose of obtaining a divorce for desertion, and his only effort to induce his wife to return was sending her two letters, one dated February 1st, 1913, and the other April 1st, 1913. The first letter was written shortly before he moved to this state and when, presumably, he had decided to do so for the purpose of obtaining a divorce, and it should be read from that viewpoint. He asks whether she expects to live in the present manner for the rest of her life; whether she intends to return to his home, or whether she is going to get a divorce, and then adds: "The

home is just the same as it always was—I never told you to go or debarred you from returning and you can return under the same conditions as you originally came to it," and that if she wished a divorce, "You can have a divorce from me at any time without any contest."

It is not difficult to read between the lines that this was not a *bona fide* attempt to remove the cause and end the separation. It contains no word of affection, no request to return, all that he offers is a place to live under the old conditions, and was evidently written to lay the basis for a divorce in this state after removal thereto, besides this an offer not to contest a divorce suit instituted by her is hardly consistent with a *bona fide* desire to induce a reconciliation, but rather an invitation to join with him in making it permanent by a divorce.

The second letter contains a notification that he has removed to New Jersey, and that his house was still open to her "the same as prior to the time you left me and your home at Brooklyn." Neither letter contains any invitation or request to return, and the last was written immediately after he moved to this state in order that he might secure a divorce, and it is not credible that the petitioner, having just moved to the state with the intention of obtaining a divorce, really intended that it should induce his wife to accept and thus prevent the accomplishment of the purpose he had in view. He knew that so long as the original cause remained he was in no danger of acceptance, he does not invite. but informs her that she may return under old conditions, and it was manifestly not his intention to ask her to come, for he carefully avoids doing so, but at the same time notifies her that if she comes she must do so with the cause of separation still present. To this letter defendant replied expressing her desire and willingness to return if the mother was not a part of the family. The petitioner having, in effect, consented to the separation, and failed to show that he has made a *bona fide* attempt to end the separation, is not entitled to a decree for divorce for desertion.

The decree appealed from. will be reversed and the record remanded to the court of chancery so that the petition may be dismissed.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER—12.