OLIN FISK GLEASON, petitioner,

*v.*

TALVA LENORE GLEASON, defendant.

[Submitted January 29th, 1936.   Decided January 29th, 1936.]

NOTE—This case was affirmed by a *per curiam* opinion in the court of errors and appeals, reported in 121 N. J. Eq. 251.

*Mr. Andrew Foulds, Jr.,* for the petitioner.

*Mr. George M. Margolis,* for the defendant-counter-claimant.

GROSMAN, A. M.

Petitioner sues for divorce on the ground of desertion. Defendant, by an original bill of complaint, seeks separate maintenance for herself and two minor children, on like grounds. The causes have been consolidated and the bill of complaint treated as a counter-claim.

The parties were married on the 28th day of April, 1918. Two children were born of the union, Robert Olin Gleason, age thirteen, and Talva June Gleason, age eleven. These people cohabited until about March, 1932, when the defendant was stricken with ulcers, probably an incident to childbirth. She suffered from this ailment until about January, 1933,

when her physician discharged her as cured. He had previously recommended that she abstain from marital intercourse while suffering from her ailment. They continued to live together under the same roof until the 1st day of July, 1933, when the petitioner left the defendant under the following circumstances: About June, 1932, the petitioner began feeling the effects of the depression. His salary, which had been $40 or $45 per week, plus expenses, was reduced to $35 per week. The defendant wife, realizing that the family could not continue living on the same scale as formerly, suggested to the petitioner that they move to cheaper quarters, but he refused. Shortly thereafter it was mutually agreed that the petitioner might better himself financially were he to quit his employment in New York and engage in business for himself in Connecticut. This he did. The wife offered to go with him but he suggested that she stay in Newark, reasoning that it would be better for the children to remain in the school they had been attending; and further that there was no sense in her moving up there with him until his business was established. Reluctantly she complied with his wishes. For some months he commuted week-ends between his home and his business in Connecticut. Gradually his visits became more irregular. In the month of April, 1933, he was home over night but twice. In June, 1933, his visit was limited to but a few minutes. He became very disagreeable and nothing pleased him. In February, 1933, he arbitrarily told the defendant that she was to go to his mother's home to live there with the children. The defendant objected to this, telling him that she was willing to live in one room if need be rather than live with her mother-in-law. He remained obdurate in his insistment. She refused to do as the petitioner requested. In March, 1933, the petitioner, without more ado, demanded that the defendant divorce him, and suggested that he would go to Connecticut; that she could refuse to accompany him and thus lay the basis for a divorce action. This she refused to do insisting that she was willing to go with him to Connecticut. He refused to have her do so. In April, 1933, the defendant removed a number of letters and photographs

from the petitioner's pocket. These missives had been addressed to him by a young woman named Margaret McLain, a resident of Hartford, Connecticut. They indicated that the petitioner and Margaret McLain were on intimate terms, at least sufficiently so to concern themselves with the relative speed with which divorces may be obtained in the States of Connecticut and New Jersey, and she cautions him that though presently he may feel indifferent about seeing his children, time may alter his views. Petitioner demanded the return of these letters and was very much put out both because the defendant had taken them in the first instance and also because she refused his demand for their return. A few days later he again demanded that the defendant divorce him, offering to pay all expenses. This time the request was made in the presence of a neighbor, Mrs. Edna B. Ott, who corroborates the defendant's story. In May, 1933, the petitioner again brought up the subject of a divorce and requested the defendant to procure one through his lawyers. She, however, insisted that if she was to consult counsel she desired one of her own selection. The petitioner then submitted to her in writing (*Exhibit D-3*), terms upon which the divorce was to be obtained. Petitioner appears to have been quite chagrined over the defendant's refusal to divorce him. Finally the landlord served her with a notice to vacate her home for non-payment of rent. She spoke to the petitioner about this but he told her that he could not do anything about the matter as he had no money. This was untrue because shortly thereafter the petitioner's bank statement came into her possession and it disclosed that he had on deposit $141. The defendant repeatedly requested the petitioner to take her and the children with him to Connecticut, offering to live in most modest quarters so long as she was mistress of her own home. He refused to countenance this proposal, insisting that she go to live with his mother. He admits that his insistment in this connection was not based upon inability to support the defendant but because he desired to curtail expenses. On July 1st, 1933, their home was dismantled. The petitioner took some of the furniture to his mother's home. The defend-

ant and her children went to live with her brother in New Brunswick. From this time on the petitioner manifested no interest whatever either in his wife or children. During the summer and winter of 1933, he sent the defendant for her maintenance and that of their two minor children, the munificent sum of $25. Five dollars per month for the three summer months and $10 for the entire winter. He admits that during this period his income was about $50 per week. In December, 1933, the defendant went to Hartford, Connecticut, and appealed to the petitioner to send her something more for the children, but he told her that he could give her no assurances. She also appealed to Margaret McLain, but to no avail.

I am thoroughly satisfied that the petitioner was absolutely insincere in offering his wife a home with his mother. He knew that the relationship between these two was unfriendly, if not hostile. He had the means to support the defendant modestly elsewhere. She offered to have him do so but he refused. It is a wife's duty, of course, to go with her husband wherever he may establish his home, but his offer must be made in good faith. He is not privileged to deliberately select a place of residence so distasteful to his wife that she cannot be happy therein. She is entitled to a home in which she alone is mistress. It may of necessity be nothing more than a hovel on the edge of a swamp and she is in duty bound to go there but it is her privilege to be mistress thereof. *Fraser* v. *Fraser, 87 N. J. Eq. 633; 101 Atl. Rep. 58.*

I am convinced that the petitioner in offering his wife a home with his mother did so with full knowledge that she would not go there and for the purpose only of having her leave him. As stated by Vice-Chancellor Backes in *Mountford* v. *Mountford, 94 N. J. Eq. 627* (at *p. 628*); *120 Atl. Rep. 634:* "He schemed to that end, and succeeded." This fact coupled with his interest in another woman and his unquestionable desire to be divorced leads me to conclude that he has failed to sustain the allegations of his petition. He is guilty of having deserted his wife and children without justification. The petition will be dismissed, and I will advise a decree of separate maintenance on the counter-claim.

The defendant's present admitted income is $50 or $60 per week, less expenses. He places his expenditures at an inordinately high figure. I think he is exaggerating in this respect. In 1934 he purchased an Oldsmobile car for approximately $800. He still owes $200 thereon. This furnishes some indication of his true income. Eight hundred dollar cars are not purchased on net incomes of $5 per week. I will allow $10 per week alimony and a counsel fee of $100. The children will remain with the mother.