95 N.J. Super. 546 (1967)
232 A.2d 157
RUTH KOCH, PLAINTIFF-APPELLANT,
v.
GEORGE KOCH, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 22, 1967.
Decided June 29, 1967.
*547 Before Judges GAULKIN, LEWIS and LABRECQUE.
Mr. Conrad W. Krafte argued the cause for appellant (Mr. Sheldon M. Liebowitz, attorney; Mr. Richard M. Fishkin, of counsel).
Mr. Harvey R. Sorkow argued the cause for respondent (Messrs. Sorkow and Sorkow, attorneys).
*548 The opinion of the court was delivered by LEWIS, J.A.D.
Plaintiff sued her husband for maintenance and support for herself and the infant child of their marriage. The Chancery Division entered judgment for defendant. Plaintiff appeals.
We gather these facts from the record: The parties were married on March 1, 1959. Plaintiff had a 15-year-old daughter by a previous marriage. It was planned that she would live with them and that defendant's mother, then residing in Hungary, would be brought to this country and that she would likewise live in their home. In September 1961 a daughter was born of the marriage.
The mother-in-law arrived on September 11, 1964; she was cordially received and took up residence with her son and daughter-in-law, they having obtained larger quarters for this purpose. It is undisputed that during the previous 5 1/2 years the marriage "was a very loving relationship"; in the words of the wife, "We had as perfect a marriage as any marriage could be." Discord, however, soon developed. It is unnecessary to recount the details that generated an atmosphere of irritation. Suffice it to say, within a very short time after the arrival of the mother-in-law the incompatibility between her and plaintiff caused a disintegration of the marriage.
The only witnesses at the trial were the litigants themselves. The wife testified that her husband's attitude toward her changed, she lost 20 pounds in weight, and the situation became "as good as unbearable." A marriage counsellor and a psychiatrist were consulted, both of whom suggested that the mother-in-law move out of the apartment. When the wife told her husband that the prevailing conditions could not continue and that he would have to choose between living with her or living with his mother, "He chose to live with his mother." She stated that upon her suggestion that the mother-in-law "could live in a furnished room and eat with us and visit with us and stay with us during the day," defendant *549 said "he didn't bring his mother over from Hungary so she could live in a furnished room."
Plaintiff, with her two daughters, left defendant on July 9, 1965. To a question whether her mother-in-law was present at the time she moved out, plaintiff replied, "when the movers came, my husband was ready to leave for work. He kissed me good-bye with tears in his eyes, and his mother just sat there and laughed out loud."
Defendant testified that his mother did not interfere with the functions of the household; he stated that he would accept his wife back if she would live up to her agreement. He was interrogated from the bench as follows:
"THE COURT: * * * As I understand it, prior to the time you got married, your wife agreed that your mother could come to live with you.
THE WITNESS: Yes.

* * * * * * * *
THE COURT: Now, supposing she hadn't agreed to let your mother come to live with you, would you have gotten married to her?
THE WITNESS: I don't think so.

* * * * * * * *
THE COURT: Well, now, if your wife would live up to her first agreement that your mother can live with you and her, would you want to go back to her again?
THE WITNESS: Yes."
It appears that this testimony weighed heavily in the deliberations of the trial judge who declared in his oral opinion:
"* * * Under ordinary circumstances, * * * [following] the holding of the Court in Fraser vs. Fraser [infra], a wife would be the mistress of her own home, and where the presence of a mother-in-law would  or father-in-law would prohibit that, then, of course, she will have the prerogative of saying that one roof is not big enough for two females to reside under, and she would then be in a position to give her husband the choice of either herself or his mother, as in this case. However, here we have a factor which does not, in my opinion, bring it within the perfect view of the ruling in Fraser vs. Fraser. * * * [T]he marital contract was entered into conditioned upon the mother being a part of the household * * *."
*550 To the extent that the decision of the trial court is predicated upon any assumption that an enforceable antenuptial agreement existed, it is erroneous. We find the evidence insufficient to establish a contract. There was no more than planning and an expression of intent. In addition, under the statute of frauds, oral agreements in contemplation of marriage are unenforceable, R.S. 25:1-5(c), and marriage is not such a part performance "as will avert the operation of the statute and render it enforceable in equity." Herr v. Herr, 13 N.J. 79, 87 (1953). See also Gilbert v. Gilbert, 61 N.J. Super. 476 (Ch. Div. 1960), affirmed 66 N.J. Super. 246, 251 (App. Div. 1961). Moreover, plaintiff carried out the premarriage arrangement to accept her mother-in-law into her house, and there is nothing in the record to suggest that she did not act in good faith. Rarely, however, will affirmative promises, indefinite as to duration, be interpreted as calling for perpetual performance. 1 Williston on Contracts (3d ed. 1957), § 38, p. 113. Note, Esslinger's, Inc. v. Alachnowicz, 68 N.J. Super. 339, 350 (App. Div. 1961). That salutary legal concept is certainly applicable in matters of domestic relations where the policy of our law is to preserve the marriage and eliminate contentious elements that do violence to it. "The home which a husband is obligated to provide for his wife must be one where she is free from abuse, violence, and interference by other persons, including his relatives." 26 Am. Jur., Husband and Wife, § 338, p. 936 (1940). For that reason the understanding between the parties, to the extent that it may be considered as one to keep the parent in the household indefinitely, may not be enforced.
Subsequent to the filing of the notice of appeal, the trial judge rendered a written opinion in which he declared that the single question for determination was whether the wife justifiably left her husband. He concluded, "* * * the mother's presence there did not in any way give plaintiff any sufficient excuse or reason whatsoever to abandon the defendant, and the Court so finds." The opinion makes *551 reference to Fraser v. Fraser, 87 N.J. Eq. 633 (E. & A. 1917), and Gleason v. Gleason, 15 N.J. Misc. 197, 190 A. 82 (Ch. 1936), affirmed o.b. 121 N.J. Eq. 251 (E. & A. 1937), with the comment that, "The proofs herein differ from the cases cited." We are convinced from our study of the record that, in the light of the rationale enunciated in the cited cases and similar authorities, the facts do not support the conclusions reached by the trial judge.
In Fraser there was a petition for divorce based on the wife's desertion. She countered that the conduct of her mother-in-law, who lived in the same household, made her life intolerable, depreciating her position as mistress of the home, exposing her to humiliation and depriving her "of the comfort and happiness she had a right to enjoy." In reversing the decision of the Court of Chancery which granted a divorce to the husband, the Court of Errors and Appeals held:
"* * * This attitude [of neutrality] on the part of the husband is not, perhaps, such legal cruelty that it would justify a wife in leaving the home, but there is a species of cruelty which cuts deeper than a blow or the lash, and that is the weakening of a husband's love and affection through the disparagement of the wife by the husband's mother, and when not resented by him, but apparently sustained, is bound to destroy the happiness of the home. Under the circumstances it is his duty to remove the cause, and if he refuses it is a potent element in the consideration of the questions whether he did not consent to the separation, and whether he made a bona fide effort to induce his wife to return." (87 N.J. Eq., at pp. 634-635)
The Gleason case also involved a husband who sought a decree of divorce on the ground of desertion. The court, however, dismissed his petition and the wife prevailed on her counterclaim for maintenance for herself and their children. There, the husband found it necessary, for business reasons, to move to Connecticut. He refused to take his wife and insisted that she live with his mother. The wife objected, asserting that she would live in one room if need be rather than reside with her mother-in-law, but her spouse remained "obdurate in his insistment." The court *552 decided that a husband is not privileged to deliberately select a place of residence so distasteful to his wife that she cannot be happy therein, saying, "she is entitled to a home in which she alone is mistress. It may of necessity be nothing more than a hovel on the edge of a swamp and she is in duty bound to go there but it is her privilege to be mistress thereof." (15 N.J. Misc., at p. 200; 190 A., at p. 83). See Busboom v. Busboom, 187 A.2d 122, 123 (D.C. Mun. Ct. App. 1962).
An earlier case, Riker v. Riker, 110 N.J. Eq. 46 (E. & A. 1932), dealt with a husband who left his wife and made a home for his mother when the wife insisted upon finding the mother a place to live elsewhere than in the home of the parties. The court there observed: "However commendable such display of filial duty may be, it is going far to say that such devotion may be permitted to conflict with the conjugal duty a husband owes to his wife." (At p. 47) Accord, Spafford v. Spafford, 199 Ala. 300, 74 So. 354, 357 (Sup. Ct. 1917); DeMauriac v. DeMauriac, 243 Mich. 385, 220 N.W. 786 (Sup. Ct. 1928); Brewer v. Brewer, 79 Neb. 713, 113 N.W. 161, 162, 13 L.R.A. (N.S.) 222 (Sup. Ct. 1907). A poignant observation in a Louisiana case is here appropriate:
"* * * [I]t is common knowledge to all experienced in such matters that the female members of the husband's family frequently create, either intentionally or unintentionally an unsettled or disturbed condition of mind in the wife which is destructive of her happiness and comfort." Verret v. Koelmel, 162 La. 277, 110 So. 421-422 (Sup. Ct. 1926).
Here, the trial judge seemed to think that plaintiff had to prove positive, affirmative interference by the mother-in-law to justify her leaving. That is not so. While the evidence fails to establish direct interference on the part of defendant's mother in the wife's management of the physical and functional operations of the apartment, it abundantly demonstrates that the mother's presence, and the effect *553 thereof upon plaintiff, constituted such a serious psychological interference with the wife's enjoyment of her rightful status that within a few weeks her otherwise happy marriage of over five years was wrecked. See Doucet v. Doucet, 158 So.2d 896, 899-900 (La. Ct. App. 1963); Verret v. Koelmel, supra; Donald v. Donald, 155 Pa. Super. 90, 38 A.2d 376, 378 (Super. Ct. 1944); Holloway v. Holloway, 203 S.C. 339, 27 S.E.2d 457, 458 (Sup. Ct. 1943); Horkheimer v. Horkheimer, 106 W. Va. 634, 146 S.E. 614 (Sup. Ct. App. 1929). Because of the continued presence of the mother-in-law, the Koch family, once united in domestic tranquility, became disturbingly fractious and discontented, culminating in a separation which might have been avoided had defendant taken reasonable and affirmative measures to eliminate the source of the friction and to save the marriage.
Plaintiff gave evidence that after she left her husband she communicated with him and on one occasion said, "there was so much love between us, it couldn't have all died." She continued, "He didn't say anything to that." Plaintiff also told the court that she would go back to live with her husband if his mother were to live elsewhere.
The husband chose a position of neutrality when it was within his probable power to effectuate a solution of the familial difficulties. We hold, in the circumstances of this case, that the departure of the wife from the household was not obstinate but was justified and the separation is to be regarded as consensual on defendant's part. The separation being justifiable, the plaintiff is entitled to relief under N.J.S. 2A:34-24. Fraser v. Fraser, supra; Gleason v. Gleason, supra. See generally 42 C.J.S., Husband and Wife, § 611 (b) (2), p. 205 (1944); Annotations 3 A.L.R. 993 (1919), 38 A.L.R. 338 (1925), 47 A.L.R. 687 (1927). Note, Shinn v. Shinn, 51 N.J. Eq. 78 (Ch. 1893); Barefoot v. Barefoot, 83 N.J. Eq. 685 (E. & A. 1914); Davenport v. Davenport, 97 N.J. Eq. 14 (Ch. 1924); Richman v. Richman, 129 N.J. Eq. 114 (E. & A. 1941); Munger v. Munger, 21 N.J. Super. 49, 53 (Ch. Div. 1952), affirmed *554 o.b. on this point, modified on other grounds 24 N.J. Super. 574 (App. Div. 1953); Paragian v. Paragian, 48 N.J. Super. 207 (J. & D.R. Ct. 1957); Falzo v. Falzo, 84 N.J. Super. 343 (App. Div. 1964). Danzi v. Danzi, 142 N.J. Eq. 662 (E. & A. 1948) and Eldredge v. Eldredge, 38 N.J. Super. 509 (Ch. Div. 1955), relied on by the trial judge, are factually distinguishable.
The wife's interests aside, there was clear error in the trial court's failure to enter judgment for support of the minor child. See Sermuks v. Sermuks, 127 N.J. Eq. 364 (E. & A. 1940); Danzi v. Danzi, supra, 142 N.J. Eq., at p. 671; Rinker v. Rinker, 3 N.J. Super. 251, 255-256 (Ch. Div. 1949); Mowery v. Mowery, 38 N.J. Super. 92, 100 (App. Div. 1955), certification denied 20 N.J. 307 (1956); Daly v. Daly, 39 N.J. Super. 117, 122 (J. & D.R. Ct. 1956), affirmed 21 N.J. 599 (1956). Note also, Parivash v. Yousef, 89 N.J. Super. 133, 137 (Ch. Div. 1965), affirmed in part, reversed in part 94 N.J. Super. 403, 408 (App. Div. 1967), wherein the obligation of support was recognized as a general principle, but, in the circumstances there existing, was not enforced. See generally Annotation 7 A.L.R.3d 1096 (1966).
Reversed and remanded for a determination of reasonable support and maintenance for plaintiff and the minor child of the marriage and the entry of judgment based thereon in favor of plaintiff.