JENNIE L. TAYLOR, complainant, appellant,

*v.*

JOSEPH N. TAYLOR, defendant, respondent.

[Argued January 8th, 1908. Decided June 15th, 1908.]

1. To entitle a wife to alimony on the ground of desertion by the husband, the desertion must have been without justifiable cause, and the husband must have refused and neglected to maintain and provide for the wife.

2. When a wife separates herself from her husband and claims alimony she must justify the separation by proof of extreme cruelty on the part of the husband to the same extent as though she were suing for divorce *a mensa et thoro* on the ground of extreme cruelty.

3. A wife who has separated herself from her husband on account of his extreme cruelty may be entitled to alimony, though he used no physical violence toward her, but she must prove that his conduct was such as to place her life or health in danger, or to render her life one of such extreme discomfort and wretchedness as to incapacitate her to discharge the duties of a wife, or that the conduct of the husband was such as to bring about these conditions.

4. Evidence considered, and *held* insufficient to show that the husband was guilty of such extreme cruelty toward his wife as to justify her in separating herself from him and to maintain a suit for alimony.

5. The failure of a husband to attempt to induce his wife to return to him removes from her desertion the element of obstinacy, and such desertion is not a ground for divorce under a statute providing that to render a desertion ground for divorce the desertion must have been willful, continued and obstinate.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Leaming, who delivered the following opinion:

This is a bill filed by the complainant, under the statute, for a decree for the payment of alimony. The husband denies the material allegations of the bill and files a cross-bill, in which he seeks a divorce from his wife on the ground of desertion. The law is well settled, in fact it is statutory, that to entitle a wife to alimony two elements must concur—*first*, the husband must,

in the language of the statute, without any justifiable cause abandon his wife, or separate himself from her, and *second,* he must refuse or neglect to maintain and provide for her.

It is well settled that a husband's conduct toward his wife may be such as to justify the wife in separating herself from him; in such case the separation, having been occasioned by the husband, will be treated as his separating himself from her. The conditions, other than adultery, which will justify the wife in separating herself from her husband are those which our statute has provided as sufficient cause to entitle the court to grant to the wife a divorce from bed and board, namely, extreme cruelty on the part of the husband. This is necessarily so, for a wife cannot be justified in assuming the right to live separate from her husband for causes which will not justify this court in granting to her the right to live separate from her husband. It follows, therefore, that when the wife, as in this case, separates herself from her husband and claims alimony she must justify that separation by proof of extreme cruelty upon the part of her husband to the same extent as she would be compelled to prove if she were suing for a divorce from bed and board on the ground of extreme cruelty.

Now what constituted extreme cruelty on the part of the husband sufficient to justify a decree *a mensa et thoro,* or to justify the wife in a suit for alimony after separating herself from him, has been defined by our courts so frequently and with such accuracy that it should not be a question for dispute. I have before me a list of all, or nearly all, of the cases upon that subject, and it may be useful to briefly review the principal authorities and summarize what I think may be said to be the settled condition of the law upon the subject at this time. The early cases were loath to hold that anything short of physical violence could amount to extreme cruelty, within the intention of the statute, but I think it fair to say that that idea has entirely disappeared from the view of the judges who are called upon to administer this branch of the law. One of the earlier cases upon the subject, and the first utterance, I believe, of the court of errors and appeals, was the case of *Close* v. *Close, 25 N. J. Eq. (10 C. E. Gr.) 526.* Justice Van Syckel, in deliver-

ing the opinion of the court in that case (at *p. 529*) uses this language: "Without attempting to give a definition of legal cruelty applicable to all cases, I think it may safely be said that, where the husband has been guilty, or there is reasonable ground to apprehend that he will be guilty of any actual violence, which will endanger the safety or health of the wife, or where he had inflicted upon her any physical injury accompanied by such persistent exhibition of ill-feeling and opprobious epithets as will endanger her health, or render life one of such extreme discomfort and wretchedness as to incapacitate her to discharge the duties of a wife, the decree of separation should be pronounced. Whether, in a case of extreme hardship, in the absence of any actual or apprehended physical injury, she will be remitted for the redress of her grievances to the domestic forum, must be left for adjudication when the case presents itself."

In the case of *English* v. *English*, reported in *27 N. J. Eq.* (*12 C. E. Gr.*) *579*, Justice Scudder, in delivering the opinion of the court (as found on *p. 585*), uses this language: "The court must be satisfied that the wife is in danger of bodily harm if she goes back to him, or, to use the language in *Close* v. *Close*, *25 N. J. Eq.* (*10 C. E. Gr.*) *529*, that he has done and will continue to do such acts as will endanger her health or render her life one of such extreme discomfort and wretchedness as to incapacitate her to discharge the duties of a wife. It is not the question whether she will live more comfortably at her father's house with a liberal allowance of alimony, but whether she is released from her duty as a wife by the extreme cruelty of her husband, and the reasonable apprehension that it will continue. The principle which must decide this case does not affect these parties alone; it is of the utmost importance to all that these bonds should not be lightly severed." The other case which I desire to quote on the point now under discussion is *Black* v. *Black*, as reported in *30 N. J. Eq.* (*3 Stew.*) *215*. In this case the vice-chancellor (Van Fleet) (at *p. 221*) uses the following language: "The question, then, presented by this branch of the case is this: Was the complainant justified in separating herself from her husband? The justification she offers is

cruelty. She must show a case of extreme cruelty such as would entitle her to a decree of separation. The courts can know no middle ground—a wife must live with her husband, make his home hers and give him her society and services, unless she can show reasons valid in law, relieving her from her duty to him. To justify a decree *a mensa et thoro,* actual physical violence need not be proved, but such conduct by the husband must be shown as will justify the court in believing that if he is allowed to retain his power over his wife, and she is compelled to remain subject to him, her life or health will be endangered, or that he will render her life one of such extreme discomfort and wretchedness as to incapacitate her to discharge the duties of a wife."

This view adopted by Vice-Chancellor Van Fleet has been since incorporated in other cases and is substantially, I believe, the accepted view to-day. In *Weigand* v. *Weigand,* reported in *41 N. J. Eq.* (*14 Stew.*) *202,* the same vice-chancellor gives expression to the same views, namely, that personal violence is not the only form of extreme cruelty which will entitle a wife to separate herself from her husband. In *Fred* v. *Fred, 67 N. J. Eq.* (*1 Robb.*) *495,* Vice-Chancellor Bergen expresses the same views. Other cases in point will be found collected in the opinion in *McVickar* v. *McVickar,* reported in *46 N. J. Eq.* (*1 Dick.*) *490.* The rule in this state may be considered settled as follows: That to justify a wife in separating herself from her husband physical violence need not be proved, but such conduct of the husband must be shown as will reasonably convince the court that her life or health was in danger, or her life rendered one of such extreme discomfort and wretchedness as to incapacitate her to discharge the duties of a wife, or that the conduct of the husband, if continued, would have brought about these conditions.

The first question, therefore, that it becomes the duty of this court, at this time, to determine, is whether or not the separation of the complainant from her husband was justified according to the standard of the decisions to which I have just referred; whether the treatment of her husband was the cause of that separation, and if so, whether that treatment amounted

to extreme cruelty within the meaning that has been attributed to it by the cases to which I have referred.

The testimony upon the part of the complainant, if accepted in its fullness, might justify an affirmative conclusion. If all that is claimed in her behalf be accepted, it is probable that her treatment at her home may have been of such nature as to justify her, in the preservation of her health, to take the radical step which she took in leaving her home; but that testimony and that claim, in practically all of its essential features, is without corroboration. The witnesses called to corroborate her in these matters have failed entirely to disclose any such condition of affairs at her home as would entitle a court to make an affirmative finding to the effect of extreme cruelty, as claimed by complainant; and in view of the contrary and opposing testimony that exists in this case it is entirely manifest that no such finding can properly be made.

Mrs. Nellie Howard testified that the husband used profane language to his wife. She nowhere claimed that she saw any physical violence or radical mistreatment. She saw marks on Mrs. Taylor's forehead, but does not know what occasioned them, other than what Mrs. Taylor told her. Her testimony touching the incident when the wife stepped on her husband's corn, is not sufficient to add any weight to the general claim upon the part of the complainant of a course of mistreatment by her husband. The only other misconduct on the part of the husband testified to by Nellie Howard, was when Mrs. Taylor had taken money from the pocket of her husband while he was asleep, the husband having exhibited extreme anger on ascertaining the fact. Mrs. Myers, called to corroborate the claim of cruelty, characterized the husband's attitude as indifferent. The only profanity which she was able to testify to was some rather vigorous language used by the husband in the absence of the wife because of her absence. Mrs. Ray W. Cox testified to nothing of the nature of cruel treatment or conduct upon the part of the husband of that nature, but the force to be given to her testimony will be found in her statement that she had heard the husband say that he had made a mistake in his marriage and would like to get rid of his wife. She never heard

him use any profane language to his wife. So far as the testimony of the witnesses goes, therefore, that embodies about all there is in the nature of corroboration. I do not find in the circumstances which have been developed in the progress of the investigation any features, corroborative in their nature, to justify an affirmative conclusion of cruelty on the part of the husband.

On the other hand, opposed to this claim, there is the testimony of a large number of witnesses who were in positions to know, as nearly as can be known by any person other than the husband and wife, what the treatment of Mr. Taylor was toward his wife. These witnesses have shown and were in a position, as a rule, to show with a great deal of fullness that Mr. Taylor's conduct toward his wife was not, to say the very least, of the nature claimed by Mrs. Taylor. The conviction brought to my mind is not that Mr. Taylor was a model husband. I think the proofs justify a conclusion very much to the contrary. I cannot help believing, under all the evidence, that Mr. Taylor fell very far short of the standard which the good of society demands of a husband in his treatment of a wife. But it would be a misjudgment upon all the testimony in this case for this court to treat as proven the averments of the bill that Mr. Taylor was cruel, in the sense of the statute, toward his wife.

If that be true—and that is my conclusion—then Mrs. Taylor was not justified in separating herself from her husband; and that fact will bar her from the relief which she seeks. The actual separation occurred under peculiar circumstances and conditions. It is perfectly plain that Mrs. Taylor may have shrunk from the disagreeable anticipations of meeting her husband when he came from the hospital. I can conceive that after he was taken to the hospital as the result of what was, to say the least, a grave indiscretion on her part, she might well have dreaded meeting him when he was well enough to resume his place at his home; but it cannot be overlooked that the conduct of Mrs. Taylor in repeating what her husband had said to her, or what she claimed her husband had said to her, in the nature of a slander, to the very people that it is claimed the husband slandered, was a grave wrong on the part of the

wife to the husband. I can find no justification for it. You may call it an indiscretion, but I think that term will not properly define it. I cannot conceive of a wife, to whom a husband has communicated a slander about another, going to the person slandered and there repeating it, unless she lacks either ordinary intelligence or has no interest in her husband, or affection for him or care for his welfare. No sensible person could have expected, in repeating the slander to those against whom it was directed, anything but trouble. Perhaps Mrs. Taylor could not, and did not, anticipate that the sons of the supposed slandered person, to whom she repeated the story, would resort to the extremity that they did, or would do the very thing that they did, but she must have known, if she had any sense, that trouble would follow what she was doing. The fault was, therefore, hers, and it is a fault that it is difficult to excuse; and I say it was natural, very natural, that she should shrink from meeting her husband on his return from the hospital where he had been as the consequence of her wrong-doing, but that fact, necessarily, does not excuse her from leaving her home and deserting her husband.

The second element necessary in the procurement of alimony is the disposition upon the part of the wife, if the husband's conduct is such as to permit her to live with the husband, to resume the relations of husband and wife. I do not find that Mrs. Taylor has ever exhibited any desire to resume marital relations with her husband. I am not prepared to say that if the husband had shown any disposition upon his part toward a reconciliation that Mrs. Taylor would not have met him half way, but the letter from Judge Wescott, or the letter dictated by Judge Wescott, cannot be treated or regarded as a letter giving accurate expression to the true feelings of Mrs. Taylor at the time that letter was penned. The subsequent letters written by Mrs. Taylor, as well as her subsequent conduct, show that that letter was not a true embodiment of her true feelings at the time it was written.

My conclusion, therefore, is that Mrs. Taylor was not justified in separating herself from her husband and has not since that time shown any proper desire upon her part to resume her

relations with him as a wife, and her claim for alimony must be denied. I have no doubt at all but that her physical condition was probably all that is claimed. She might have been a very weak woman physically, and I have no doubt the attentions she received from her husband were much less than a wife in her condition would crave and should receive, but I cannot conclude that her husband's conduct was such as would justify her in this breach against her matrimonial vows and against society itself.

Now the second branch of this case is entirely independent and is practically the same as though it were an independent suit, in that the husband claims a divorce against his wife by reason of this desertion. The law touching the desertion which entitled the husband to a decree of divorce against his wife is defined quite as accurately as the law touching alimony. The subject has been before the courts as frequently, or more frequently, than almost any other breach of the law, and I have before me, at this time, an outline of all, or nearly all, of the leading cases upon the subject, and I will refer to them briefly in order to define what I consider to be the settled law of this state that the facts in this case may be applied to the law. The statute provides that the desertion must be willful, continued and obstinate. In the case of *Taylor* v. *Taylor, 28 N. J. Eq. (1 Stew.) 207,* Vice-Chancellor Van Fleet lays down the rule that under this statute three elements must concur to constitute a desertion willful, continued and obstinate—*first,* cessation of cohabitation; *second,* an intent in the mind of the defendant to desert, and *third,* that the separation was against the will of the complainant. In that case Vice-Chancellor Van Fleet reviews four earlier decisions which fully sustain the view taken by the learned vice-chancellor, and, among others, the case of *Bowlby* v. *Bowlby, 25 N. J. Eq. (10 C. E. Gr.) 406,* which was a decision rendered by Vice-Chancellor Dodd, and afterwards affirmed by the court of errors and appeals. Since the decision of Vice-Chancellor Van Fleet in *Taylor* v. *Taylor,* the view there so tersely defined has been followed by our courts in a great many cases, and the view always laid down and which will be found to underlie and form the ground work of all cases is that

to entitle the husband to a divorce upon the ground of desertion, the separation must be against his will, and that a failure upon his part to attempt to induce his wife to return makes the desertion of the wife willful and continued, but destroys the element of obstinacy, and I think the views expressed by the courts in the various cases may be said to entirely concur in that feature which requires, on the part of the husband, some effort to induce the wife to return, else the obstinacy required by the statute does not exist.

I am not prepared to say that no case can be conceived where the husband could not procure a divorce upon the ground of desertion without having made some effort to procure the return of his wife, but I am prepared to say that such a case must be an extreme one, if it can in fact exist, and that this is not that kind of a case. It is undoubtedly true that where it is perfectly clear that any attempt upon the part of the husband to induce his wife to return would be unavailing, he would be excused from that duty, provided his heart was right, but if the going away of the wife was to any degree caused, or provoked by him, if he can in any sense be said to be chargeable with misconduct, even though not in such degree as to justify her conduct, then there is upon him the most powerful duty to use his utmost effort to get her to return, and upon that the authorities are entirely at rest.

The views which I have expressed are what I consider the settled law of this state, and will be found embodied in the following cases: *Rittenhouse* v. *Rittenhouse, 29 N. J. Eq. (2 Stew.) 274;* *Trall* v. *Trall, 32 N. J. Eq. (5 Stew.) 231;* *Hankinson* v. *Hankinson, 33 N. J. Eq. (6 Stew.) 66;* *Loux* v. *Loux, 57 N. J. Eq. (12 Dick.) 561;* *Van Wart* v. *Van Wart, 57 N. J. Eq. (12 Dick.) 598;* *Hall* v. *Hall, 60 N. J. Eq. (15 Dick.) 469,* which is a decision of the court of errors and appeals; *Edwards* v. *Edwards, 69 N. J. Eq. (3 Robb.) 522,* a decision by our present chancellor; *Ojserkis* v. *Ojserkis, 62 Atl. Rep. 113,* a decision rendered in this court by the late Vice-Chancellor Grey, and *Meier* v. *Meier,* a decision by this present chancellor, reported in *68 N. J. Eq. (2 Robb.) 9.* In *Van Wart* v. *Van Wart,* Vice-Chancellor Stevens gives what to my mind is a fair statement of the summary of the authorities in the following lan-

guage: "It seems plain to me that the desertion in this case, though it may have been willful, was not 'obstinate.' It was not persisted in against the effort or influence of the husband to bring it to an end. Obstinate persistence on the part of the wife was wanting because the advances or concessions which the husband, as a just man, ought to have made to terminate it, were also wanting. Such advances and concessions were the prerequisite of any obstinate persistence against them." Again he says: "In considering what effort or concession must be made in any given case, the conduct of the parties toward each other must be considered. It is obvious that more effort and concession will be required of one whose conduct actually produces or contributes to produce the desertion than of one who is blameless. If the party deserted is not in fault, and effort to induce the deserting party to return would probably prove unavailing, it need not be shown. In general it may be said that that desertion to be adjudged obstinate, which has resisted such effort or concession as the party alleging such desertion ought, under the particular circumstances of the case, to have made to bring it to an end."

The effort upon the part of the cross-complainant in this case to bring the desertion of his wife to an end does not appear to have been made at all. I cannot believe that his conduct has been so blameless or so praiseworthy as to exonerate him from any attempt whatever, or even from a desire for his wife to return to him, and he has testified that he has no such desire. While I have already stated that the letter written at the instance of Judge Wescott does not, to my mind, give a true expression of the feelings or sentiments of the wife, and while I think the husband was justified in regarding that letter as a letter with a purpose other than the purpose expressed on its face, yet the duty was thereupon the part of the husband to take no chance that his refusal to meet any proffer upon the part of his wife to terminate the desertion should be the thing that stood in the way of reconciliation, and I am obliged to conclude that, under the law, as I understand it, and as I have undertaken to define it, I am unable to advise a decree in favor of the cross-complainant.

The relations between these parties are, indeed, unfortunate, and it might, perhaps, be better for both if they were separated, but that is a question which I am not permitted to deal with; I am obliged to apply the law as I conscientiously believe it exists, and under the law as it exists I do not feel justified in awarding alimony or in awarding to the defendant a decree of divorce on the ground of desertion.

A decree will be prepared accordingly. There will be no costs taxed, but I will allow a counsel fee to the plaintiff of $50.

*Mr. Spencer Simpson,* for the appellant.

*Mr. Frederick A. Rex,* for the respondent.

PER CURIAM.

Complainant filed a bill against her husband under the statute for a decree requiring him to pay alimony. He filed a cross-bill praying for divorce on the ground of desertion. By the final decree both bills were dismissed. From so much of the decree as dismisses the complainant's bill she appeals. Defendant has not appealed.

We concur in the views expressed by Vice-Chancellor Leaming so far as they relate to the dismissal of complainant's bill, and the decree in that respect will therefore be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, BOGERT, VROOM, GREEN, GRAY, DILL—12.

*For reversal*—None.