ETHEL SEGAL, plaintiff-appellant,

*v.*

JOSEPH SEGAL, defendant-respondent.

[Submitted February term, 1929. Decided May 20th, 1929.]

*Mr. Morris Bloom,* for the plaintiff-appellant.

*Mr. W. H. Smathers,* for the defendant-respondent.

The opinion of the court was delivered by

KAYS, J.

This is a suit by the wife against the husband. They were married in January, 1922, and lived together until August, 1925. The last place of abode, while living together, was in the city of Baltimore, Maryland. In August, 1925, the defendant, Joseph Segal, left his wife with her consent and moved to Atlantic City, New Jersey, where he has continued to reside ever since. The wife, Ethel Segal, still remained a resident of Baltimore, Maryland, where her father and his family resided. Since the abandonment by the husband of the wife, the husband has failed to contribute anything to her support, and in that situation the wife filed a petition in September, 1927, charging the husband with abandoning her without justifiable cause and praying that a decree be made compelling him to provide suitable support and maintenance for her. The hearing resulted in a dismissal of the wife's petition, from which she has appealed.

It appears that sometime before the husband left the wife she gave birth to a still-born child. Shortly after this event she was stricken with paralysis and has never as yet fully recovered from that stroke. It is evident from the testimony that after this happening the defendant lost his affection for his wife. They quarreled more or less frequently and he threatened to leave her and go to Atlantic City. The wife consented that he should go and when he left called a taxi-cab for him. This abandonment by the husband of his wife, even with her consent, did not relieve him from his marital obligations and particularly did not relieve him from his obligations to maintain and support her even though he had ceased to live with her, by her consent. He was at least, according to the evidence, partly responsible for the separation and it was his duty to make a reasonable effort to per-

suade his wife to consent to the resumption of their marital relations; that is, it was his duty to endeavor to persuade her to consent to live together again as man and wife. The defendant claimed that he did this. He says that he wrote letters urging her to come to Atlantic City and live with him. One of these letters, he admits, was written after he had received a letter from his wife's lawyer demanding that he contribute toward her support. The petitioner denies that she ever received such letters from him. The defendant then says that he sent his brother to see his wife in Baltimore in an effort to persuade her to come to Atlantic City and join him there. The defendant himself did not go to see his wife, claiming that he was afraid that if he went to Baltimore her father would have him arrested. He fails to say, however, for what reason he was afraid that her father would cause his arrest. His brother, however, did go to Baltimore and called at the petitioner's residence. This brother stated in the presence of the petitioner's mother and in the presence of the petitioner, that his brother "Joe" wanted the petitioner to come back to live in Atlantic City. The petitioner, at the time, was at the top of the stairs in her residence and the brother of the defendant stood in the lower hall. In response to this statement the petitioner said, "Joe can go to hell." This was perhaps not a very refined expression, but her husband's conduct in leaving her and in never making a proper effort to persuade her to resume the marital relations and in failing to provide her with money for her support and maintenance, then sending his brother to her with a message instead of going himself, we think justified her in refusing to return to her husband upon such an invitation or request.

We are of the opinion that the evidence discloses sufficient facts to sustain the wife's contention in this case. We think that the refusal of the husband to maintain and support his wife was without legal justification and that he should be compelled to do so. We are therefore of the opinion that the decree of the court of chancery should be reversed and that a decree should be made compelling the defendant to properly maintain and support the petitioner as prayed for in the petition.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, KALISCH, BLACK, CAMPBELL, LLOYD, WHITE, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD, DEAR, JJ. 13.