HELEN NICHOLS CARNEY, complainant,

*v.*

J. CAMPBELL CARNEY, defendant.

[Decided January 30th, 1934.]

*Messrs. McCarter & English* (by *Mr. George W. McCarter*), for the complainant.

*Mr. Herman H. Singer,* for the defendant.

CHILD, A. M.

The parties to this suit were married on the 15th day of September, 1928, in South Orange, in this state. They lived for a short time, as I recall it, at a hotel, and then went to

live with the complainant's parents where they lived for some seven months, until the month of March, 1929. Thereupon they took up their residence in an apartment, and there remained for some considerable length of time. There were frequent visits by the complainant to her people, and in the month of September, 1930, the defendant called on the complainant, as I recall it, at the seashore, when she told him they would have to have a larger apartment, their lease expiring in the month of October, 1930. The defendant says that the wife no longer desired to live at the apartment, and on September 23d, or thereabouts, 1930, he moved the furniture from the apartment and placed it in storage. The wife says that she knew nothing about this at the time and that the defendant brought her clothing to her home.

From about the first of October, 1930, and down to November 11th, 1930, at which time the complainant was confined, the defendant called every night at her parents' home. They were then apparently not living together, nor under the same roof. After the birth of the child, and on Thanksgiving eve, the defendant brought the complainant from the hospital and brought her to the home of her parents. Complainant's testimony is that he called upon her every night until February, 1931. He apparently continued to call until the 28th of February, 1931, when there was a disturbance and quarrel over certain bills that the complainant had contracted. Thereafter, the defendant did not call at the home of his wife's parents, and so far as appears from the evidence, did not again come in personal contact with his wife to talk to her.

The defendant husband says that his wife was unwilling to live with him, and that this accounts for her frequent visits to her home. The complainant in this case was apparently, and still is, a highly nervous woman. She, on the stand, relates a series of quarrels and nagging, and claims, as I recall it, one slight physical assault. After the quarrel of February 28th, 1931, the defendant husband wrote his wife a letter, requesting her return to him. This was about the same time that he wrote several letters to trades people, cutting off her credit. Immediately after receiving the letter of

March 12th, 1931, the complainant consulted Judge Harley, then a practicing lawyer, with respect to obtaining adequate support. Judge Harley had no records or data with which to refresh his memory, but he says that the complainant expressed a willingness to live with the defendant when she became well, and as he recalled it, the defendant indicated that he had had enough. There was a letter, as I recall it, on January 13th, 1932, from the defendant to the complainant, which the complainant denies the receipt of, and says that she did not answer any on the advice of counsel.

I think that there can can be no doubt that the complainant, at the time of the separation in February, 1931, had made up her mind that further cohabitation with this defendant was not desired. On the stand she said that she would not again live with him, presumably justifying this stand; that because the defendant had nagged and quarreled over bills, as she says, and had been unkind, justified her in this position. The defendant's testimony is that he was at all times ready to live with his wife and that she refused to live with him.

The attitude of the complainant wife towards matrimony and the possible birth of children is indicated by the testimony of two women witnesses who were called here to-day.

I am satisfied that the wife was not justified by the husband's conduct in refusing to live with him. I am also satisfied that she did avoid living with him during the time down to February 28th, 1931, as much as possible. She objected, so he says, to taking an apartment. Her excuse for not taking an apartment earlier than she did, was that the apartment was not ready, and that there was no one living in the apartment house. The janitor or superintendent of the apartment was called here to-day and says that at the time the Carney furniture was moved in, in December or January, 1929, that in the month of December there were eight or nine families living in the place and in January some twenty-four families. Feeling as I do, that the complainant has refused to live with her husband, it becomes necessary to take up the question as to whether there is a justification in that refusal.

The case before me is similar to the case of *Fallon* v. *Fallon, 111 N. J. Eq. 512; 162 Atl. Rep. 406.* That case, affirmed on opinion of Advisory Master Herr, correctly states the rule of law with respect to the rights and obligations of a wife. In that case it is said:

"It is the duty of the wife to live with her husband at his home and to give him her services and society. From these obligations she is only relieved if she can show that the conduct of her husband has been such as will reasonably convince the court that her life or health are in danger or her life rendered one of such extreme discomfort and wretchedness as to incapacitate her to discharge the duties of a wife."

Furthermore, in the same case:

"The misconduct relied upon to justify the wife in leaving her husband must amount to a ground of divorce *a mensa* or *a vinculo,* and it is not a necessary ingredient in constructive desertion that the husband shall entertain, in connection with his acts of cruelty, any settled purpose to drive his wife from him; it is enough if such is the natural consequence of his acts."

In other words, the cruelty which must be shown in this case to entitle the complainant to a decree is the same amount of cruelty which she would have to show where she is suing for a divorce on the ground of cruelty or on the ground of constructive desertion. Mere nagging, disagreeable, and taciturn conduct is not sufficient ground for divorce and therefore is not sufficient ground to justify the wife in refusing to live with the husband or in separating herself from him.

I therefore feel that the bill of complaint in this case must be dismissed.

We now take up the question of the husband's counterclaim. The law imposes the duty on the husband to make reasonable advances to obtain the return of his wife. Her desertion, and such it was in this case, must be against his will and it must have continued to be against his will throughout the entire period of the desertion charged. This man wrote a letter in March, shortly after the quarrel in February, asking his wife to return. He almost immediately thereafter wrote letters cutting off her credit. He had an interview

with Judge Harley shortly after the writing of this letter, and in that interview, if Judge Harley's testimony is to be believed, and I do believe it, this man expressed his unwillingness to live with his wife. In other words, her desertion of him or separation from him was not against his will, and therefore the allegation of willfulness, one of the three necessary elements, the other two being obstinance and continuancy of the desertion, has not in this case been proved by the defendant husband, and there will be a decree of dismissal of his counter-claim.

I will allow a counsel fee of $200 to the solicitor of the complainant.