CARMELLA ZANZONICO, complainant,

*v.*

ANTONIO ZANZONICO, defendant.

[Decided September 1st, 1936.]

*Mr. Louis Auerbacher, Jr.,* for the complainant.

*Mr. Herman Marx,* for the defendant.

HERR, A. M.

The complainant moves for the allowance of suit money and maintenance *pendente lite* upon her bill for separate

maintenance under section 26 of the Divorce act (*P. L. 1907 p. 482; 2 Comp. Stat. p. 2038*), and is met by a counter-motion for the dismissal of the bill on the ground that the court is without jurisdiction to entertain it, for the reason that the subject-matter of complainant's suit has already been adjudicated adversely to her in this court, and for the further reason that having secured an order for support from her husband in the juvenile and domestic relations court she is barred from maintaining her suit in this court on the doctrine of election.

The bill sets up that following the marriage of the parties on July 9th, 1932, they cohabited until the month of April, 1934, at which time the complainant was forced to separate herself from the defendant because of certain alleged acts of extreme cruelty extending from the date of the marriage down to April 8th, 1934; that ever since that time she has lived apart from him and that he has never "requested her to return nor given her any assurance that if she did return that she would be treated properly;" that in June, 1934, the defendant filed a petition in the court of chancery against complainant, praying for an annulment of said marriage, to which she "filed an answer and counter-claim in said cause, praying for a divorce on the ground of extreme cruelty;" that said proceedings came on for a hearing in November, 1935, and that on January 14th, 1936, a decree was entered dismissing the petition of the defendant and the counter-claim of the complainant; that at no time prior or subsequent to January 14th, 1936, has the defendant "extended to complainant personally an invitation to return to his home, nor has he made any offer or invitation in good faith to any one on complainant's behalf for her to return to his home;" that since the said final hearing in November, 1935, the defendant "has failed, refused and neglected to support complainant or to contribute any moneys towards her support and maintenance other than as hereinafter mentioned."

The bill then proceeds to allege that in March, 1936, complainant filed a complaint against her husband in the juvenile and domestic relations court of Essex county for support,

charging that he "has refused and failed to provide adequate support and maintenance * * * contrary to 'An act concerning the juvenile and domestic relations court of 1929, chapter 157' (*Cum. Supp. Comp. Stat. 1925-1930 p. 432 § 53-215b* (*1*) and the supplements thereto and amendments thereof, and contrary to the provisions of 'An act for the settlement and relief of poor, *P. L. 1924 ch. 132,' (Cum. Supp. Comp. Stat. 1911-1924 p. 2732 § 161-124*), and the supplements thereto and amendments thereof," that after a hearing the court entered an order directing the defendant to pay her $7 a week for her support and maintenance, but that "on or about May 23d, 1936, the defendant, through his attorney, obtained a writ of *certiorari* to review the proceedings of the juvenile and domestic relations court," and that "since May 23d, 1936, the defendant has failed to pay or contribute any moneys towards complainant's support and maintenance."

Finally, the bill contains allegations respecting the needs of the complainant and the faculties of the defendant, and a prayer for relief in the usual form.

The decree in the prior suit in this court dismissed both bill and counter-claim, reciting that proofs had been taken in open court, that the court had heard and considered the pleadings, proofs and arguments, and that "upon full consideration thereof" it appeared to the court that neither of the parties had sustained the truth of their respective allegations and that neither was entitled to relief.

In *O'Brien* v. *O'Brien, 103 N. J. Eq. 214; 142 Atl. Rep. 898; affirmed, 105 N. J. Eq. 250; 147 Atl. Rep. 911*, it was determined in a similar situation that (*103 N. J. Eq.*—at *p. 218*): "The court must assume that the divorce case was adjudicated upon its merit, and that the decree entered therein is *res judicata* of the matters complained of therein, and, as the complainant herein relies upon the same matters alleged in the former suit, the aforesaid decree is dispositive of the case *sub judice*. * * * The complainant cannot nullify the *res judicata* rule by changing the character of the relief sought from that of a decree of divorce *a mensa et*

*thoro,* to a decree for maintenance, nor be held to question the decree in the former suit by collateral attack, such as is manifested in her present suit." In the *O'Brien Case* the wife's prior suit was for divorce on the ground of extreme cruelty, and her second suit for separate maintenance on the ground of constructive abandonment based upon the same allegations of extreme cruelty. Such is the situation presented by the bill in the present suit, and the rule of the *O'Brien Case* is applicable.

It should be noted at this point that an examination of the record of proceedings in the prior suit in this court between the parties hereto (docket 102/679) discloses that the wife's counter-claim (filed August 21st, 1934, and refiled, evidently in error, September 12th, 1934) prayed for a decree of separate maintenance, and not for divorce as alleged in her present bill. To determine whether an amendment might avail complainant the stenographic notes of the hearing in the prior suit were consulted to ascertain whether the issue of abandonment might have been undecided (*Locher* v. *Locher, 112 N. J. Eq. 25; 163 Atl. Rep. 251*), but it appeared therefrom that this issue was adjudicated against the wife on the merits. Hence, it is immaterial that this complainant, in her prior suit, prayed for separate maintenance rather than divorce. The issue of abandonment presented by her counter-claim in that suit and determined adversely to her upon the merits is the same issue now presented a second time by her bill in this suit.

In her counter-claim in the former suit, the complainant claimed, as she claims in her present bill, that she was obliged to leave her husband in April, 1934, because of his extreme cruelty to her, and that he did not request her to return nor assure her that if she did return he would treat her properly. The allegations contained in her present bill are based upon the same course of conduct on her husband's part of which she complained in her counter-claim in the prior suit, and include no charges of cruelty not alleged in the counter-claim or any other matters in justification of her remaining away from her husband, except that he has not "extended to com-

plainant personally an invitation to return to his home, nor has he made any offer or invitation in good faith to anyone on complainant's behalf for her return to his home."

It was held in the *O'Brien Case, supra* (at *p. 219*) that "inasmuch as this court adjudicated in complainant's former suit that she had failed to substantiate the allegations of her petition it was her duty to return to live with the defendant * * *." The court of errors and appeals has repeatedly held that "it is the duty of the wife to live with her husband at his home and to give him her services and society. From these obligations she is only relieved if she can show that the conduct of her husband has been such as will reasonably convince the court that her life or health are in danger or her life rendered one of such extreme discomfort and wretchedness as to incapacitate her to discharge the duties of a wife, or that the conduct of the husband, if continued, would have brought about these conditions." *Taylor* v. *Taylor, 73 N. J. Eq. 745, 746; 70 Atl. Rep. 323; Pinkinson* v. *Pinkinson, 92 N. J. Eq. 669, 671; 113 Atl. Rep. 143; Sabbarese* v. *Sabbarese, 104 N. J. Eq. 600; 146 Atl. Rep. 592; affirmed, 107 N. J. Eq. 184; 152 Atl. Rep. 920; Werpupp* v. *Werpupp, 108 N. J. Eq. 169; 154 Atl. Rep. 424.*

By its decree in the prior suit this court necessarily adjudicated that the complainant was not relieved from these obligations because of her husband's conduct, or by his consent to the separation. Hence, it became her duty to return to him, or at least to endeavor in good faith to do so, as a condition precedent to filing another suit for separate maintenance. Her bill does not allege that she made any effort in this direction, or that she would have returned to him had he made advances, nor does it allege that since the entry of the decree in the prior suit the defendant has in anywise discouraged a reconciliation or done any act or acts which would legally excuse her failure to make advances, so that there is nothing in the present bill to take the case out of the prior adjudication. The decree in the earlier case therefore operates *res judicata* as a bar to pleading and proving all of complainant's charges against her husband contained

in the present bill. *Dowling* v. *Dowling, 91 N. J. Eq. 464; 110 Atl. Rep. 39;* affirmed, on this point, *93 N. J. Eq. 159; 115 Atl. Rep. 378; City of Paterson* v. *Baker, 51 N. J. Eq. 49* (at *p. 57*) ; *26 Atl. Rep. 324; In re Leupp, 108 N. J. Eq. 49, 58; 153 Atl. Rep. 842; Ordinary* v. *Webb, 112 N. J. L. 395; 170 Atl. Rep. 672.*

The decision in *Barefoot* v. *Barefoot, 83 N. J. Eq. 685; 93 Atl. Rep. 192,* is not in conflict with the views above expressed. The court in that case said (at *p. 687*) : "All that is decided at this time is that when a wife resides away from her husband with his consent the husband's obligation to support her continues." Nor is *Segal* v. *Segal, 104 N. J. Eq. 457; 146 Atl. Rep. 189,* authority to the contrary. There the husband's conduct had been partly responsible for the separation, and the court held that his common law duty to maintain his wife persisted until he made just advances to terminate the separation.

In the instant case the point has been passed where inquiry can be made as to the husband's attitude toward the separation. That matter was adjudicated in the prior suit. The decree amounted to a judicial determination that the wife had left her husband and had remained away from him without his consent, express or implied, and without just cause. It was within her power to change the status so fixed, but only by making a *bona fide* effort to effect a reconciliation.

If there were any doubt upon this point, it is resolved by reference to the proofs filed upon this motion, which show that in fact the defendant did seek his wife's return to him after the decree of January 14th, 1936, but that she refused.

The second ground upon which defendant bases his motion to dismiss is likewise well taken, in my judgment, viz., that complainant (assuming that she had the right of separate maintenance), elected her remedy by filing her complaint in the juvenile and domestic relations court and securing an order from that court for the payment of a weekly sum of money for her support. Although the defendant afterwards procured a writ of *certiorari* from the supreme court to review the legality of that order, and upon the issuance of

said writ discontinued his payments under the order (obviously because the writ operates as a *supersedeas*), the order still stands unreversed. The defendant's action in procuring the writ was not an "extraneous action," as in *Shore* v. *Shore, 96 N. J. Eq. 661, 665; 126 Atl. Rep. 320,* but simply a step in the cause. It is by the action of the supreme court in issuing the writ, rather than by the defendant's action in procuring it, that the order is presently inoperative. The complainant elected her forum and the entire subject-matter of her suit is now before the supreme court. Under these conditions the rule applied in the case of *Roarke* v. *Roarke, 77 N. J. Eq. 181; 75 Atl. Rep. 761,* as to election of remedies, is likewise applicable to the present case. It is true that the order of the juvenile and domestic relations court is not operative, but it is not true that the order is being disobeyed, as in *Rennie* v. *Rennie, 85 N. J. Eq. 1; 95 Atl. Rep. 571,* and *Becker* v. *Becker, 90 Atl. Rep. 675* (not officially reported). The supreme court in its discretion may on application modify the effect of the writ so as to allow complainant *pendente lite* relief, or the complainant may procure the vacation of the order which she now seeks to uphold against the defendant in the *certiorari* proceedings, but so long as those proceedings are pending it would be an unwarranted encroachment upon the jurisdiction of the supreme court for this court to entertain complainant's present suit, based as it is upon the same subject-matter.

This determination in favor of the defendant upon his motion to strike the bill should not be regarded as sanctioning the practice of using affidavits upon such a motion, which amounts to a general demurrer under the old practice. For the purpose of the motion all of the well pleaded allegations of the bill are admitted to be true. At the argument in this case affidavits were read without objection; indeed, both sides argued upon the proofs. The court has therefore dealt with the matter as if the proofs were properly before the court, under an answer in lieu of plea (rule 68). Consideration of them was hardly necessary for the determination of the motion, but is justified upon the authority of *National Bank*

*of New Jersey* v. *Lefkowitz, 107 N. J. Eq. 265; 152 Atl. Rep. 328,* as well as upon the inherent power of the court to prevent a vexatious suit from being prosecuted to a hearing. *Henninger* v. *Heald, 51 N. J. Eq. 74; 26 Atl. Rep. 449; Benjamin* v. *Van Voorhis, 106 N. J. Eq. 196, 197; 150 All. Rep. 393.* See *Mendel* v. *Berwyn Estates, 109 N. J. Eq. 11; 156 Atl. Rep. 324.*

The bill will be dismissed. Its dismissal will of course carry down with it the complainant's application for *ad interim* relief.