21 N.J. Super. 49 (1952)
90 A.2d 539
EDWINA YEWELL MUNGER, PLAINTIFF,
v.
CLARENCE A. MUNGER, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided July 7, 1952.
*51 Mr. Meyer L. Sakin, attorney for plaintiff.
Mr. Walter S. Keown, attorney for defendant.
BURTON, J.S.C.
This is a suit by the wife against her husband for maintenance. For the purpose of this determination I do not think it is necessary to recite in detail the proofs in this case.
*52 The parties to the action were married in 1920, and lived in the marital domicile in Merchantville, New Jersey until the early part of 1940, when the defendant left the home and resided for a time with a friend, Mr. Wilson. Prior to the date of his leaving in 1940, the unhappy condition of their married life had reached a climax in 1938 when the wife instituted a suit for divorce based on the grounds of desertion and adultery, in which action the husband denied the charges as set forth by the wife and alleged a desertion on her part, and prayed for a divorce in his counterclaim. Although this action was instituted in 1938 both parties continued to reside under the same roof until 1940.
A decree in the divorce suit instituted by Mrs. Munger was entered in August, 1940, dismissing her cause of action, and advising a decree for divorce on the grounds of desertion in behalf of the counterclaimant, Mr. Munger.
In September of 1941, our then Court of Errors and Appeals reversed the decree of the lower court pro tanto, stating that the counterclaim should have been dismissed. Munger v. Munger, 130 N.J. Eq. 279 (E. & A. 1941).
It is at times impossible to ascertain the exact truth in controversies of this nature. In this matter, however, it is admitted that the defendant left the marital home in the early part of 1940, during the pendency of the divorce proceedings instituted by the plaintiff; the plaintiff continued to live in the marital domicile until some time later  August 1940  when she went to California with their son.
Defendant knew that the plaintiff was going to leave the home and go to California during his absence, and it is obvious he made no efforts to dissuade her. On the contrary it is clear that he made it possible for her to leave by paying her transportation. In addition, the defendant admits that he was averse to his wife returning to the home in Merchantville, and although he did not recall whether he was informed that his wife's counsel had requested the right for Mrs. Munger to return to their home, he states in any event he would not have approved of her return.
*53 At common law a husband was liable for the support of his wife while they lived separate and apart with his consent. Buttlar v. Buttlar, 57 N.J. Eq. 645, 656 (E. & A. 1899).
A husband's legal duty to support his wife does not cease by reason of her absence from his home at his instance or with his consent. It is only when he desires her presence in his home that her presence in that home can be made a condition precedent to his obligation to support. Until it is made to appear that the wife's absence from her husband's home is without his cooperation or consent, or is against his will, the issue as to whether the husband has by his conduct sacrificed his right to her presence in his home is not a live issue. When a wife resides away from her husband with his consent his obligation to support her continues. Barefoot v. Barefoot, 83 N.J. Eq. 685 (E. & A. 1914).
The law favors the continued cohabitation of the parties, and the husband's consent to separation is not deemed justifiable cause for such separation; nor does the wife's consent absolve the husband from his common law duty to maintain her. Richman v. Richman, 129 N.J. Eq. 114-117 (E. & A. 1941).
In addition to denying the plaintiff's cause of action the defendant pleads that the plaintiff should in any event fail to succeed: first, because she does not come into court with clean hands, and secondly, because she is guilty of laches.
In an effort to sustain the defense of unclean hands the defendant depends upon an allegation in plaintiff's affidavit of April 15, 1951, in an application for support pendente lite, in which affidavit she stated "the main asset I have is a property in Baltimore, Maryland, which was given me by my father in 1920. Under a trust fund arrangement and under an agreement with the defendant the property was later set up under a Trust Fund so that I would receive the income therefrom, which presently approximates $50.00 per week."
*54 The defendant asserts that she received more than $50 a week. The proofs disclosed that in the month of April 1951, when she made the aforementioned affidavit, she received from Mr. Dankmeyer, trustee, directly the sum of $200; in the month of March 1951, she received directly, the sum of $200; in the month of February 1951, she received directly, the sum of $150; in the month of January 1951, she received directly, the sum of $300. However, the proofs at the final hearing did disclose that in addition the trustee paid in behalf of the plaintiff certain obligations. Therefore the variance is in reality what she received directly, which was in truth about $50 per week at that time, and those obligations paid by the trustee to her creditors.
In addition it was proven that Mrs. Munger kept no books or records, and the supervision of the Peabody Apartments and the trust fund was in the hands of Theodore Dankmeyer, Esq., who paid directly to Mrs. Munger monthly sums of money, and other bills on her account.
It also appears, upon answering interrogatories propounded by the defendant, the plaintiff submitted a detailed report from 1944 to and including 1950, showing rentals received and expenses paid on said Peabody Apartments.
Under the circumstances, I do not feel that the plaintiff withheld or concealed material facts with the intent and purpose of misleading the court.
In order to further invoke his defense of unclean hands the defendant alleges in his answer "that plaintiff instituted a suit for divorce against him in 1938, charging him with adultery; that she testified falsely and employed detectives who, admittedly, testified falsely, thus impairing defendant's financial and social standing in the community; that plaintiff, therefore, does not come into court with clean hands and is not entitled to the relief prayed for." The proof in the present action is barren of any evidence, other than the defendant's general statement, that would justify such a finding.
*55 The opinion of our former Court of Errors and Appeals, Munger v. Munger, 130 N.J. Eq., at page 284, throws some light on this allegation:
"Petitioner and the defendant thereafter resided together in the family home, ostensibly bearing each to the other the relation of husband and wife, until defendant's conduct with the intervener, well characterized by the master on the motion to dismiss the adultery count as `honestly' generating in petitioner's mind the belief of `misconduct between' them, led to this suit for divorce * * *."
It might be said that the conduct and actions of his wife, of which the husband now complains, may well be regarded as provoked by his own acts and conduct. And it seems to me that at present the defendant is attempting to justify his abandonment of his wife because she sought the aid of the court in a former suit. However, justifiable cause for the husband's abandonment in a suit for separate maintenance is the commission by the wife of a matrimonial offense. Nothing short of commission of an offense by the wife, cognizable as a cause for divorce, will excuse the husband's abandonment. McNeel v. McNeel, 126 N.J. Eq. 255, 8 A.2d 572 (E. & A. 1939).
It is true that the plaintiff has waited over ten years before instituting her present suit for maintenance. However there is no statute of limitations, general or special, which applies to suits for divorce, maintenance, or nullity of marriage. The doctrine of laches is of general application in courts of equity, and is an equitable defense, and has been urged in suits for divorce and nullity of marriage. The settled rule in this State is that mere lapse of time does not constitute laches. The delay must be unreasonable in the circumstances and prejudicial. Massie v. Asbestos Brake Co., 95 N.J. Eq. 298 (E. & A. 1923); Agnew v. American Ice Company, 2 N.J. 291-300 (1949).
A court of equity will refuse relief after a long delay because of the difficulty, if not the impossibility, of arriving at a safe and certain conclusion as to the truth of the matters in controversy and doing justice between the parties. *56 In the present matter, however, the defendant has admitted as a fact his desire for the separation and its continuance; therefore the truth is not in doubt. I find that the delay was not prejudicial and that the defense of laches has no merit.
The defendant further contends that the plaintiff should fail in her present cause of action because the proofs do not conform with the complaint as to time when the abandonment took place, or when defendant failed to support his wife.
The jurisdiction of the court to award maintenance to the wife being statutory, the wife must prove in addition to the marriage two other elements  an unjustifiable abandonment or separation by the husband, and a refusal or neglect to suitably provide for her. While the complaint may be inartistically drawn, I am satisfied that all the statutory requirements are present and proved in this matter. The element of time when the abandonment took place may be construed as varying because it depends not necessarily upon the time when the defendant left his wife, but when he concluded that he no longer desired her presence in his home.
I think that the evidence warrants a finding in this matter that an abandonment existed by agreement, as admitted, in 1940, or at the time when the defendant at the trial stated that he would not have approved of her returning to his home, which desire the plaintiff states was expressed by her in 1941. In any event the abandonment existed long before plaintiff instituted her present suit for separate maintenance.
I am further of the opinion that the facts warrant a finding that the husband was guilty of refusing and neglecting to maintain and provide for his wife, in the sense in which the words are used in the statute, upon which her complaint is founded, because the husband did not, according to the income he was receiving, suitably and properly provide for her, under the circumstances, since 1942, at which time he started to pay his wife the sum of $50 per week. See Rule 3:15-2, which in part provides that "Such amendment of the pleadings as may be necessary to cause them to conform *57 to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues."
N.J.S. 2A:34-23 provides that it shall be lawful for the court to make orders "as the circumstances of the parties and the nature of the cases shall render fit, reasonable and just"; while section 2A:34-24 specifies that it shall be lawful for the court to order suitable support and maintenance for such time as the nature of the case and the circumstances of the parties render suitable and proper in the opinion of the court, and from time to time make further orders touching the same as shall be just and equitable. These statutory provisions are comprehensive and leave much to the discretion of the court as to the amount to be awarded, for it would be quite impossible for the Legislature to anticipate and prescribe for the varying circumstances which are bound to arise. It is difficult, if not undesirable, to attempt to state general rules; no two cases are exactly alike.
While there are no fixed rules for allowance for maintenance of a wife, and I believe it would be impossible to form one which would work justly in all cases, certain rules have been laid down so as to form some guide; but every case must depend very much upon its own peculiar circumstances. Richmond v. Richmond, 2 N.J. Eq. 90, 92 (Ch. 1838).
A wife is entitled to sufficient allowance to enable her to live according to the scale to which she was accustomed, with proper regard to her husband's means. Armour v. Armour, 135 N.J. Eq. 47, 37 A.2d 29 (E. & A. 1944). The separate property and income of the wife must also be taken into consideration, as well as the federal income tax provisions.
Mr. Munger is a retired business man, 70 years of age, with large interests under his control, from which he received a total income of $59,231.29 in 1951, net income $28,969.21; *58 a total income of $58,900.61 in 1950, net income of $33,375.99; a total income of $56,871.35 in 1949, net income of $28,487.55.
Mrs. Munger's gross income for the year 1951 was $6,898.74; 1950, $12,238.71; 1949, $5,635.38. I fully realize that in those years there were items included not expected under ordinary circumstances in so far as Mrs. Munger is concerned. However, it can be accepted that her present income from her separate property totals presently $100 a week.
In 1937 Mr. Munger's gross income was more than $19,000, in 1938 more than $33,000, and in 1939 more than $32,000, in 1940 more than $34,000. However, at that time the income taxes had not reached the percentage as presently levied and his net income would be approximately the same as it is today.
After the separation the defendant was making weekly payments to his wife of the sum of $100 per week at first, but for several years last past this sum has been reduced to $50 per week.
I am of the opinion that the evidence disclosed that the defendant has not been adequately supporting the plaintiff, and the facts have sustained the wife's cause of action.
The plaintiff's testimony and that of the defendant is in conflict as to the scale in which they were accustomed to live. Her testimony that it cost 55 to 60 thousand dollars a year to maintain them, their home and servants, was based on admissions by the defendant, which he denied making. His gross income during the last years they occupiecd their home was never more than $35,000 a year. The defendant stated that the living expenses assumed by him amounted to approximately $15,000 a year. His statement finds support in the testimony of the auditor who examined his check books.
However, unquestionably the defendant's payment of $50 per week is not in keeping with his financial ability, and in accordance with their station in life. In fixing the amount *59 I must consider his income, her separate property, the federal income tax as it applies to both parties.
In the present situation, and under the present proofs, it does not seem unreasonable, but on the contrary equitable and just, that the weekly payments of the defendant to the plaintiff be increased; and that he pay his wife the sum of $150 per week.
As to allowance for counsel fee, there was an initial allowance to the attorney for plaintiff in the sum of $250. In the present application for his services rendered to the plaintiff, having in mind the time and effort spent and services rendered by the plaintiff's attorney, I conclude that he presently should be paid the sum of $2,500 in addition to the original allowance.