38 N.J. Super. 509 (1955)
119 A.2d 483
EDNA ELDREDGE, PLAINTIFF,
v.
VAN NESS ELDREDGE, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided December 23, 1955.
*511 Mr. Frank H. Blatz, attorney for plaintiff (Messrs. Blatz and Feiring, attorneys).
Mr. Joseph I. Bedell, attorney for defendant (Mr. Henry Handelman, attorney).
CONFORD, J.A.D. (temporarily assigned).
The parties to this action cohabited from the date of their marriage, January 7, 1950, until the plaintiff left the home of the defendant July 7, 1954, assertedly because of his extreme cruelty toward her. She seeks separate maintenance. N.J.S. 2A:34-24, formerly R.S. 2:50-39, as amended L. 1948, c. 320. The origins and purposes of this statute are detailed in Richman v. Richman, 129 N.J. Eq. 114 (E. & A. 1941).
Ordinarily, a wife who leaves her husband's home for reasons not founded upon conduct by the husband constituting a matrimonial offense sufficient to entitle her to maintain an action for divorce will not be accorded maintenance, as it is the duty of the wife to live with her husband at his home and to give him her services and society. Zehrer v. Zehrer, 5 N.J. 53, 58 (1950); Taylor v. Taylor, 73 N.J. Eq. 745, 750 (E. & A. 1908); Weigel v. Weigel, 132 N.J. Eq. 33 (E. & A. 1942). Plaintiff's action is founded on the thesis that her departure from her husband's home was, indeed, the product of extreme cruelty. I am quite unable to agree.
This was a second marriage for each of the parties. Both had lost previous spouses by death. Plaintiff was 55 and defendant 57 when they married. She had property of her own worth over $30,000 and still retains it. Defendant is an engraver earning approximately $7,500 per year. They seem to have managed tolerably well together except for jealousy by the plaintiff of attentions by the defendant to his adult daughter who lived with them the first few months *512 and was in close touch with her father after she removed to Rockford, Illinois, and, later, to New Orleans. There were other points of difference but I do not find that the conduct of the defendant, on the whole, can be justly condemned as attaining to extreme cruelty within our cases. He was gruff, indelicate and not too considerate. She was ill-tempered, jealous and demanding. He was hardly more unkind to her than she to him. It was a case of incompatibility, not cruelty. There was no threat to her life, health or ability to discharge her marital duties. McCabe v. McCabe, 129 N.J. Eq. 431 (E. & A. 1941).
Plaintiff's particular reliance is on the events of the evening of July 6, 1954, culminating in her leaving. There is sharp dispute as to the facts. The parties agree they retired at 10:30 P.M. and went to bed together. She claims he struck her in the face, neck and thigh during an argument over his intention to visit his daughter without her and that she arose, dressed and drove away to the home of her sister, stopping en route to show her injuries to the local Dunellen police. His version is that she pestered him to agree to take her to Colorado and that, when he refused, she accused him of wanting to go alone to see his daughter in order to have sexual relations with her; that this resulted in a loud dispute and his retiring to the living room couch, whereupon she dressed and left. He denies he struck her. Her testimony as to that detail suffers from the denial by the police that she showed them any injuries when she complained at police headquarters. From the proofs I doubt whether he struck her. If he did, it was an isolated incident, due, at least in part, to her own provocation, and it does not amount to extreme cruelty. 11 New Jersey Practice (Herr, Marriage, Divorce and Separation) (2d ed. 1950), § 756, p. 149.
Upon the conclusion of the proofs respecting alleged cruelty the court announced the findings aforestated. Thereupon, at the suggestion of the court, plaintiff moved to amend the complaint to allege, in the alternative, a separation of the parties by consent or acquiescence of the defendant. *513 The motion was granted, in the interests of substantial justice, pursuant to R.R. 4:15-2, it having been the view of the court that a debatable factual and legal issue was presented, and had actually been tried, as to whether the circumstances attending the separation of the parties and subsequent events did not impose an undischarged obligation on the husband to attempt a bona fide reconciliation, within such cases as Richman v. Richman, supra; Venere v. Venere, 137 N.J. Eq. 526 (E. & A. 1946); Barefoot v. Barefoot, 83 N.J. Eq. 685, 686 (E. & A. 1914); Pierson v. Pierson, 15 N.J. Misc. 117, 127, 189 A. 391 (Ch. 1937); Munger v. Munger, 21 N.J. Super. 49, 52, 53 (Ch. Div. 1952), affirmed, but modified in another respect, in 24 N.J. Super. 574 (App. Div. 1953); see also Dick v. Dick, 11 N.J. Super. 533, 538 (App. Div. 1951). The views which engaged my interest in relation to the issue referred to are typified in the following expression adopted by the Court of Errors and Appeals in the Barefoot case, supra (83 N.J. Eq., at page 686):
"The law requires a husband to support his wife. It is his right to require her to receive that support in his home as his wife, unless he has lost that right by his conduct; but his legal duty to support his wife does not cease by reason of her absence from his home at his instance or with his consent. It is only when he desires her presence in his home that her presence in that home can be made a condition precedent to his obligation of support. Until it is made to appear that the wife's absence from her husband's home is without the husband's co-operation or consent or is against his will, the issue as to whether the husband has by his conduct sacrificed his right to her presence in his home is not a live issue. * * *"
I cannot doubt from the proofs in the present case that after the plaintiff departed the home of the defendant neither party manifested any real desire for or bona fide effort at reconciliation. When she returned for some of her effects the next day the defendant had no objection. Later, by arrangement of legal counsel for the parties, she came for her furniture. He permitted it to be removed but did not allow her entry into the house. He never solicited her return home. Under what I suspect was legal coaching *514 (cf. O'Brien v. O'Brien, 103 N.J. Eq. 214, 223 (Ch. 1928), affirmed 105 N.J. Eq. 250 (E. & A. 1929)), she phoned him in September 1954, asking him to take her back. He suggested a month's deliberation of the step. She phoned again in October and this time he suggested they discuss it together in conference with their counsel. The meeting was arranged. Defendant attended, plaintiff did not. There were no further negotiations. At the trial, upon interrogation by the court, defendant said he would be willing to consider resumption of cohabitation but plaintiff's response was emphatically in the negative. See Carney v. Carney, 13 N.J. Misc. 125, 127, 178 A. 210 (Ch. 1934), affirmed 117 N.J. Eq. 559 (E. & A. 1935). In this background, is it to be held that defendant has consented or acquiesced (Richman, supra, 129 N.J. Eq., at page 116) in the separation so as to charge him with liability for plaintiff's separate maintenance notwithstanding her unjustified departure from their home and her failure thereafter to attempt in good faith to re-establish their cohabitation? After careful consideration of the authorities cited and others I am led to conclude not.
In the Barefoot case, supra, the evidence was to the effect that the husband knew in advance of the wife's intent to leave when she did and that he made no effort to dissuade her; indeed, he was glad to see her go. In the Richman case, supra, the proofs were that for some time prior to the separation the husband wanted to rid himself of his wife but in such a way as to place the blame on her shoulders. In the Munger case, supra, it again appeared that the husband knew the wife was planning to leave him and that he assisted her in doing so. In all of these cases there appeared an affirmative disposition on the part of the husband to effectuate the separation. There is nothing like that here. Although the plaintiff had planned to leave defendant a year before she finally did, she was dissuaded at that time by the defendant. Her leaving on July 6, 1954 was totally unexpected by him and, as I have held, unjustified. In the circumstances, while defendant cannot hold *515 her departure the inception of an actionable desertion unless he undertakes in good faith to solicit her return, no more can she compel his maintaining her apart while she defaults in her obligation to render him his due as a husband, her services and society. While that default persists he does not have to seek her out to entreat a return to the duty she ought not to have forsaken. Taylor v. Taylor, supra, is directly in point. There the wife sued for separate maintenance and the husband filed a cross-bill for divorce on the ground of desertion. The court held that while the husband had fallen "far short of the standard which the good of society demands of a husband in his treatment of a wife" (73 N.J. Eq., at page 750), the proofs did not establish extreme cruelty on his part. It was consequently held that, not having been justified in leaving the defendant nor "`shown any proper desire upon her part to resume her relations with him as a wife'" (73 N.J. Eq., at pages 751, 752), her claim for maintenance must fail. The cross-claim for desertion was also dismissed, the husband having been equally derelict in the matter of reconciliation. In accord, in comparable situations, are the holdings in Venere v. Venere, supra, and in Werpupp v. Werpupp, 108 N.J. Eq. 169 (E. & A. 1931). See also Zanzonico v. Zanzonico, 14 N.J. Misc. 674, 186 A. 779 (Ch. 1936). I conclude that mere passivity by a husband whose wife has left him for less cause than a legal matrimonial offense does not constitute such consent to or acquiescence in the separation as will subject him to liability for her separate maintenance.
There will be judgment for the defendant. A counsel fee of $350 will be awarded the plaintiff. In fixing the amount I have considered the lack of merit in the complaint and plaintiff's personal means.